**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SANDERLING MANAGEMENT LTD., | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:20-cv-04627 |
| | ) | |
| v. | ) | Honorable Judge John Robert Blakey |
| | ) | |
| SNAP INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>MEMORANDUM IN SUPPORT OF DEFENDANT SNAP INC.'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)</u>**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................................1

II. BACKGROUND ...........................................................................................................1

    A.    The Asserted Patents.............................................................................................1

    B.    Representative Claims ..........................................................................................2

    C.    The Asserted Claims Recite Well-Known Technologies. ....................................5

        1.    Digital Image and Media Content Processing Functions...........................5

        2.    GPS Module...............................................................................................6

        3.    Distribution Rule........................................................................................7

III. LEGAL STANDARD....................................................................................................7

IV. ARGUMENT AND AUTHORITIES............................................................................8

    A.    The Asserted Claims Are Drawn To An Abstract Idea. ........................................8

        1.    The Asserted Claims focus on the well-established idea of distributing information based on meeting a condition. ............................9

        2.    The Asserted Claims merely recite computer-performed mental steps that would have otherwise been performed by a person.................10

        3.    The Asserted Claims recite merely functional limitations........................11

    B.    The Asserted Claims Do Not Contain an Inventive Concept. ..............................13

    C.    No claim constructions issues prevent the Court from granting its motion...........15

V. CONCLUSION .............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Affinity Labs of Texas, LLC v. DirecTV, LLC*
    838 F.3d 1253 (Fed. Cir. 2016)................................................................................12

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l.*
    134 S. Ct. 2347 (2014)...........................................................1, 5, 7, 8, 9, 13, 14, 15

*Andrew Corp. v. Beverly Mfg. Co.*
    No. 04 C 6214-JFH, 2005 U.S. Dist. LEXIS 47213 (N.D. Ill. 2005)......................7

*Berkheimer v. HP Inc.*
    881 F.3d 1360 (Fed. Cir. 2018)..............................................................................7

*Bilski v. Kappos*
    561 U.S. 593 (2010)................................................................................................7

*BSG Tech LLC v. BuySeasons, Inc.*
    899 F.3d 1281 (Fed. Cir. 2018)..............................................................................8

*buySAFE, Inc. v. Google, Inc.*
    765 F.3d 1350 (Fed. Cir. 2014)............................................................................15

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*
    776 F.3d 1343 (Fed. Cir. 2014)..........................................................................3, 8

*CyberSource Corp. v. Retail Decisions, Inc.*
    654 F.3d 1366 (Fed. Cir. 2011)............................................................................13

*Elec. Power Grp., LLC v. Alstom S.A.*
    830 F.3d 1350 (Fed. Cir. 2016)......................................................................14, 15

*Ex Parte James Bongiorno*
    No. 2019-000130, 2020 Pat. App. LEXIS 6527 (P.T.A.B. March 20, 2020).........14

*Ex Parte Sanjiv Desai*
    No. 2019-004988, 2020 Pat. App. LEXIS 8049 (P.T.A.B. June 8, 2020)........11, 14

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*
    566 U.S. 66 (2012).............................................................................................7, 9

*OIP Techs., Inc. v. Amazon.com, Inc.*
    788 F.3d 1359 (Fed. Cir. 2015)............................................................................15

*Palay v. United States*
  349 F.3d 418 (7th Cir. Ill. 2003) ...................................................................7

*In re Rosenberg*
  813 F. App'x 594 (Fed. Cir. 2020) ...........................................1, 10, 11, 13, 14

*In re Rudy*
  956 F.3d 1379 (Fed. Cir. 2020)..............................................................11, 15

*Sa v. Nfl Enters.*
  No. CV 17-03919-AB(SKx), 2018 U.S. Dist. LEXIS 234455 (C.D. Cal. Mar.
  9, 2018) .............................................................................................14

*SAP Am. v. Investpic, LLC*
   898 F.3d 1161 (Fed. Cir. 2018)..............................................................11, 12

*In re TLI Commc'ns LLC Patent Litig.*
   823 F.3d 607 (Fed. Cir. 2016).....................................................................12

*Two-Way Media v. Comcast Cable Communications, LLC*
  874 F.3d 1329 (Fed. Cir. 2017).....................................................................12

*Ultramercial, Inc. v. Hulu, LLC*
  772 F.3d 709 (Fed. Cir. 2014)........................................................................5

*Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*
  916 F.3d 1363 (Fed. Cir. 2019)....................................................................13

<u>Statutes</u>

28 U.S.C. § 1404 ...............................................................................................1

35 U.S.C. § 101 ..............................................................................1, 3, 7, 12, 13, 15

<u>Other Authorities</u>

Fed. R. Civ. P. 12(b)(6)......................................................................................1

U.S. Patent No. 7,247,259..................................................................................7

U.S. Patent No. 7,747, 259.................................................................................7

U.S. Patent No. 9,355,412.................................................1, 2, 3, 4, 6, 13, 14, 15

U.S. Patent No. 9,639,866............................................................................2, 3, 4

U.S. Patent No. 10,108,986..........................................................................2, 3, 4

-iii-

Defendant Snap Inc. ("Snap") submits the following Memorandum in Support of its Motion to Dismiss Plaintiff Sanderling Management LTD's ("Sanderling") Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.[1]

## I.      **INTRODUCTION**

The three patents that Sanderling asserts against Snap in this case are each invalid pursuant to 35 U.S.C. § 101 because they are directed to an abstract idea, but fail to recite an inventive concept beyond that abstract idea.   Each asserted claim is directed to the abstract idea of "forwarding" or "distributing" an image or media content "processing function" to a mobile device if the device's sensor data matches a condition.   The limitations of the asserted claims merely "describe the computer performed mental steps that would otherwise have been performed in person" to match data to a condition to trigger the transmission of information.   *See In re Rosenberg*, 813 F. App'x 594, 596 (Fed. Cir. 2020) (finding similar claims to be directed to patent ineligible subject matter because they merely "assess[ed]" and "compared" data, "evaluat[ed] changes in the data," "monitor[ed] the data," "determin[ed]" whether a modification was required, and "provid[ed] instructions . . . to follow or modify the procedures or parameters.").   Just like the claims found patent ineligible in *In re Rosenberg*, the asserted claims here describe an abstract idea, but fail to recite an inventive concept beyond that abstract idea.   Thus, the asserted patents are invalid and unenforceable under 35 U.S.C. § 101 and Snap's Motion to Dismiss should be granted.   *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l.*, 134 S. Ct. 2347 (2014).

## II.     **BACKGROUND**

### A.      The Asserted Patents.

Sanderling filed suit against Snap on August 6, 2020 for allegedly infringing U.S. Patent

---

[1] Snap files this Motion in lieu of an answer.   Snap also moves concurrently herewith to transfer venue pursuant to 28 U.S.C. § 1404 to the U.S. District Court for the Central District of California.

Nos. 9,355,412 (the "'412 Patent"), 9,639,866 (the "'866 Patent"), and 10,108,986 (the "'986 Patent") (collectively, the "Asserted Patents").  Complaint, ¶¶ 33, 57, 83, Exhs. A-C.  Each of the Asserted Patents shares the common title "Dynamic Promotional Layout Management and Distribution Rules," names Michael Jacobs as the sole inventor and Sanderling as the assignee, claims priority to U.S. Provisional Application No. 61/757,277 filed on January 28, 2013, and shares a common specification.[2]  *Id*., ¶¶ 20-23.  According to the face of the Asserted Patents, and as alleged, Sanderling is a company with offices in the British Virgin Islands, and Mr. Jacobs, Sanderling's founder and Director, resides in Hod-HaSharon, Israel.  *Id*., ¶¶ 2, 8-9; Exhs. A-C.  Sanderling does not allege that it makes or sells products embodied by the Asserted Patents.

The Asserted patents relate generally to "dynamic loading of [] digital branding functions associated with [] distribution rules."  '412 Patent,[3] abstract.  The '412 Patent explains that "[a]n image branding function is a function that when applied to a digital image[,] processes the image by applying a transformation according to the function."  *Id*., 5:64-67.  "For instance, applying a function that adds an icon or that alters the digital image layout and/or the like."  *Id*., 5:67-6:1.  In one embodiment, the image branding function "may be displayed by a client terminal, in a graphical palette, allowing the user to select a digital image branding function for processing a selected or captured image in real time."  *Id*., 6:15-19; Fig. 7.  The "distribution rules" may be "automatically selected" "based on the location of the party," *e.g.*, as determined by a GPS "location detecting sensor."  *Id*.,15:15-17.  Notably, the location-detecting sensor approximates "the geographic location of end users by triangulation as known in the art."  *Id*., 15:35-38.

### B.    Representative Claims

The Federal Circuit has held that it is enough to analyze a "representative claim" under

---

[2] Snap reserves its right to challenge the asserted priority date.
[3] The Asserted Patents each share a common specification.

Section 101 when the claims are substantially similar and linked to the same abstract idea.  *See, e.g., Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).  That is the case here.  As illustrated in the following chart, the asserted independent claims recite substantially similar limitations.

| '412 Patent, Claim 1 | '866 Patent, Claim 1 | '986 Patent, Claim 1 |
|---|---|---|
| *A computerized method* of distributing a digital image processing function, said computerized method comprising: | *A computerized method* of distributing a digital image processing function, said computerized method comprising: | *A computerized method* of distributing a digital media content processing function, the computerized method comprising: |
| *using* at least one *server* having at least one hardware *processor* and over a *network* to access a *database* storing at least one digital image *processing function* associated with at least one *distribution rule* defining a geographic location; | *using* by at least one *server* having at least one hardware *processor* one or more digital image *processing functions*, each of said digital image processing functions associated with a geographic location; | *accessing* at at [sic] least one *server* having at least one hardware *processor* one or more digital media content *processing functions*, each of the digital media content processing functions associated with at least one *distribution rule* defining a *sensor data condition*; |
| *receiving*, over said network, a *Global Positioning System (GPS) location indication* from each of a plurality of *mobile devices*, each said location indication is determined according to a *GPS module* executed by one of said plurality of mobile devices; | *receiving*, over a *network*, a *Global Positioning System (GPS [sic] location indication* from each of a plurality of *mobile devices*, each said GPS location indication is determined according to a *GPS module* executed by one of said plurality of mobile devices; | *receiving*, over a *network*, *sensor data* from each of a plurality of *mobile devices*, wherein the sensor data is determined according to outputs of at least one *sensor* of each of the plurality of mobile devices; and |
| *matching*, using said at least one at least one hardware processor, each said GPS location indication with said geographic location; | N/A | N/A |
| automatically *forwarding*, over said network and *in response to receiving said Global Positioning System (GPS) location indication*, said at least one digital image processing function to at least | automatically *forwarding*, over said network at least one of said digital image processing functions to at least one of said plurality of mobile devices, *based on a match* between the | *distributing*, over the network, at least one of the digital media content processing functions to at least one of the plurality of mobile devices, *based on a match* between the sensor data |

| one mobile device of said plurality of mobile devices, said at least one mobile device having a respective said GPS location indication which *matches* said geographic location; | geographical location associated with said at least one digital image processing function and the GPS location indication of said at least one mobile device; | condition defined by the at least one distribution rule associated with the at least one digital media content processing function and the sensor data of the at least one mobile device; |
|---|---|---|
| wherein said at least one image processing function ***is set to be used*** *by an application* executed on said at least one mobile device to process a digital image designated at said at least one mobile device to create an output digital image. | wherein said at least one image processing function ***is set to be used*** *by an application* executed on said at least one mobile device to process a digital image designated at said at least one mobile device to create an output digital image. | wherein the at least one digital media content processing function ***is configured to be used*** *by an application* executed on the at least one mobile device to process a digital media content to create an output digital media content. |

(emphasis added).  Claim 1 from each Asserted Patent recites the same basic steps of: (i) ***using*** or ***accessing*** a media content processing function with a server, (ii) ***receiving*** data from a sensor on a mobile device, and (iii) ***transmitting*** the media content processing function to the mobile device based on a ***match*** between the sensor data and a condition, (iv) wherein the processing function ***is set or configured to be used by an application*** to create a processed output image.

In the '412 Patent and the '866 Patent, the sensor data is a GPS location indication from a GPS module on the mobile phone, and the media content processing function is a digital image processing function.  The '412 Patent also recites an additional step of matching the GPS location indication to a geographic location condition.  The '986 Patent recites an additional independent claim (claim 18) that incorporates essentially the same limitations as claim 1, but written as a system claim, instead of a method claim.  However, the system claims merely recite generic computer components such as a server, a network interface, a database, and a processor, each of which is described generally by the function the component performs, the same functions recited in method claim 1 of the '986 Patent, as opposed to reciting any specific structure.  As such, the system limitations substantially mirror their method-claim counterparts.

The remaining Asserted Claims provide additional details, but do not change the basic concept to which the claims are directed. Rather, these dependent claims simply attempt to cover superficial refinements to the abstract idea by requiring, *inter alia*, the "image processing function [to] comprise[] an overlay function," "a black and white function, a sepia function" or " an antique function" ('412 Patent, cl. 2-3), a "plurality of functions," (*id*., cl. 4-5), or the application to include a GUI or program code to "publish" or "store" output images, add an "icon," "alter" the distribution rule within a time limit, or process video (*id*., cl. 6-12). None of these limitations add more to the abstract idea. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014) (finding that adding particularity does not alter the "heart" of the claims).

### C.     The Asserted Claims Recite Well-Known Technologies.

The Asserted Claims recite and generally rely on a handful of well-understood technologies, *inter alia*, a server, a processor, a network, a mobile device, a database, and a sensor. These generic components are well understood and have appeared *ad nauseam* in patent disclosures and judicial opinions for years. *See*, *e.g.*, *Alice*, 134 S. Ct. at 2359. The Asserted Claims also recite the somewhat more technical sounding terms of "digital image processing function," "media content processing function," "GPS module," and "distribution rule." But, these terms also amount to nothing more than well-understood and generic components.

#### 1.     Digital Image and Media Content Processing Functions

Sanderling is attempting to read its "digital image processing function" and "media content processing function" limitations on Snapchat's customized "lens" and "filter" technology. Snapchat's lenses and filters enable a user to alter or add content, *e.g.*, a caption or graphic, to a digital image in a manner that can be specific to the location of the user as determined by location tracking technology built into the user's mobile phone. But, apart from the claims, the specifications of the Asserted Patents do not make a single reference to the claim terms "digital

image processing function" or "media content processing function."  Instead, the specifications describe "image processing functions" and "image branding functions."  With respect to "image processing functions," the specifications explain that such functions include a "sharpening," "de-blurring, color correction, auto focus, fill flash, cropping, de motion blurring, black and white, sepia, antique, overlay, pinch, zoom, Gaussian smoothing, rotation and/or the like."  '412 Patent, 16:39-43.  And narrowing limitations recited by the dependent claims make clear that the claimed "digital image processing function" and "media content processing function" limitations include "overlay," "sepia," "black and white," and "antique" image processing functions.  *Id.*, cl. 2-3.  These functions have long been used in traditional and digital photography.

Of particular interest, and based on Sanderling's apparent infringement positions alleged in its Complaint (at ¶¶ 29, 30-105), the overlay function appears to include providing an overlay of graphical or textual data to an image.  This feature, is therefore, analogous to providing an overlay captioning or framing of an image with text or graphics as might be done in a scrapbook or photo album, applying a local postmark to a postcard, or taking a photo of a person behind a caricature with the face cutout, *e.g.*, as one might do at a theme park or tourist attraction.  And, of course, overlay technology has also long been used in both traditional and digital photography to attach time stamps, location information, and/or other metadata on video and digital images.

2.    GPS Module.

The term GPS module also does not appear anywhere in the specifications of the Asserted Patents outside of the claims.  However, the specifications explain that a "location determining sensor may be a GPS utilized in calculating end user location.  For instance, the location detecting sensor approximates the geographic location of end users by triangulation as known in the art."  '412 Patent, 15:35-38.  Indeed, implementing GPS technology on mobile devices, and the concept of embedding location data taken from the GPS sensor on a digital image, have been well-known

for decades.  *See* Salen Decl., Exh. 1 ("U.S. Patent No. 7,747, 259") at 1:65-2:61.[4]

           3.       <u>Distribution Rule</u>.

As defined in the Asserted Patents, "[a] distribution rule is a rule used in determining how to target a group of end-users, for instance, a rule that determines that only a group of end users having certain characteristics and/or match a certain requirement.".  '412 Patent, 6:3-14.  As of the priority date of the patents, tracking "geo localized client terminal usage in a social media network . . . to target a particular end user group" by "embedding coupons" into targeted promotional banners and sponsored links was a known marketing strategy.  (*Id.*, 1:63-2:2.)

## III.    <u>LEGAL STANDARD</u>

Patent eligibility under 35 U.S.C. § 101 is a threshold issue of law.  *Bilski v. Kappos*, 561 U.S. 593, 602 (2010).  Section 101 contains implicit exceptions that abstract ideas, laws of nature, and natural phenomena are not patentable.  *Alice*, 134 S. Ct. at 2354.  This case concerns the "abstract ideas" category, which embodies "the longstanding rule that '[a]n idea of itself is not patentable.'"  *Id.* at 2355 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).  In explaining the policy behind this rule, the Supreme Court opined that "monopolization of [ideas] through the grant of a patent might tend to impede innovation more than it would tend to promote it."  *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012).

Whether a patent is impermissibly directed to an abstract idea can be determined on the pleadings.  *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).  Patent validity under Section 101 is properly decided on a motion to dismiss when the asserted claims, read most

---

[4] The Court may take Judicial Notice of U.S. Patent 7,247,259.  In resolving a motion to dismiss, the Court is "entitled to take judicial notice of matters in the public record." *Palay v. United States*, 349 F.3d 418, 425 n.5 (7th Cir. Ill. 2003) (citing *Anderson v. Simon*, 217 F.3d 472, 474-75 (7th Cir. 2000)).  Matters subject to judicial notice include patents and related public documents.  *Andrew Corp. v. Beverly Mfg. Co.*, No. 04 C 6214-JFH, 2005 U.S. Dist. LEXIS 47213 (N.D. Ill. 2005).

favorably to the patent holder, still describe an abstract idea. *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347 (Fed. Cir. 2014).

To determine patent eligibility, the Supreme Court in *Alice* set forth a two-step test "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355. First, the Court must determine if the claims at issue are directed to a patent-ineligible concept, such as an abstract idea. *Id*. Second, if the Court determines that the claims are directed to an abstract idea, it must then "determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id*. (internal quotations and citations removed). This second step is "a search for an inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id*. (internal citations removed). The Asserted Claims meet the first step by being directed to an abstract idea, and fail the second step by not containing an inventive concept.

## IV.   ARGUMENT AND AUTHORITIES

### A.   The Asserted Claims Are Drawn To An Abstract Idea.

In determining whether claims are directed to an abstract idea, the court looks to the focus of the claims. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1286 (Fed. Cir. 2018). Here, the Asserted Claims carry out the same abstract idea of providing a "media content processing function" based on a condition (*e.g.*, the location of the device that captured the media content). Specifically, the Asserted Claims recite: (i) using or accessing a media content processing function with a server; (ii) receiving data from a sensor on a mobile device; and (iii) transmitting the media content processing function to the mobile device based on a match between the sensor data and a condition; (iv) wherein the media content processing function is set or configured to be used by an application on the mobile device to create a processed output image.

1.   The Asserted Claims focus on the well-established idea of distributing information based on meeting a condition.

The Asserted Claims focus on the core idea of providing information—in this case, a processing function—based on meeting a condition.  This same idea has been implemented by advertisers, photographers, scientists, historians, and even families capturing memories of their trips in scrapbooks, postmarked postcards, and the like, for decades.

In the most analogous example to the Asserted Patents, advertisers have long known to process (e.g., alter) images of the object of their advertisement to highlight the most important of marketing tenets: "location, location, location."  Indeed, an advertisement that includes a picture related to a business without a caption or indication of the location would not be worth the paper on which it was printed.  Consequently, advertisers focus advertisements, bearing location specific overlays, to the locations in which they are advertising, *e.g.*, using direct mailers and/or localized television, newspaper, or magazine ads.  Similarly, photographers showcase photographs in an album with overlays corresponding to the location the image was acquired, historians and scientists frequently document their work using photographs printed in textbooks with corresponding location information overlaid thereon, and families documenting important events frequently resort to scrapbooking in which pictures of memorable events might be "processed" by affixing them on the pages of a book and overlaying them with designs or captions corresponding to the location where the picture was taken.  In another familiar example, it has been common for decades for families to take novelty photos behind character cutouts specific to a particular location.

The Asserted Claims do little more than recite these same "building blocks of human ingenuity" (*Alice*, 134 S. Ct. at 2354) and "should be free to all men and reserved exclusively to none." *Mayo*, 566 U.S.. at 71.  Under *Alice*, the Asserted Claims are directed to abstract ideas that cannot be patented.  The added claim language of "using" or "accessing" the processing function

with a server, receiving sensor data or a GPS location indication from a mobile device, matching the sensor data or location indication to a condition, and transmitting the processing function to the mobile device do nothing but describe the same age-old idea of providing a processing function based on a condition, *e.g.*, a location where an image was acquired.

It is worth noting that the Asserted Claims do not actually require applying the overlay to an image, but just providing the overlay. As such, in the analogy of the novelty cutout picture, the corresponding implementation of the idea equates to placing the theme park character cutout at a location, but not actually taking the photograph.

        2.    <u>The Asserted Claims merely recite computer-performed mental steps that would have otherwise been performed by a person.</u>

The Federal Circuit's recent decision in the patent prosecution appeal of *In re Rosenberg* is instructive. 813 F. App'x at 598. In that case, the applicant attempted to patent claims directed to managing data for drug clinical trials. *Id*. at 595. The claims at issue recited limitations that required "collecting data" comprising "performance metrics with respect to [the] clinical trial," "transmitting the data from [a] remote site to a processing location," automatically "checking the transmitted data . . . to assess the consistency of the data with respect to other collected data" by comparing current and historical data sets, "electronically reporting the data," "determining" if a notification was required, and "providing instructions, based on" that determination. *Id*. The Federal Circuit determined that the "claims are directed to the basic idea of deciding whether to fine-tune a given system . . . based on reviewing the system's performance data." *Id*. at 596. The Federal Circuit held that the claims were directed to an abstract idea because they described "computer-performed mental steps that would otherwise have been performed in person to assess and respond to performance measures in the field." *Id*.

The claims here are not meaningfully different than the patent ineligible claims discussed

in the *In re Rosenberg* case, and can be mapped to the claims from *In re Rosenberg* as follows:

| Asserted Claims | *In re Rosenberg*, 813 F. App'x at 595 |
|---|---|
| A computerized method … | A computer-implemented method … |
| accessing a processing function associated with a distribution rule | collecting data comprising performance metrics with respect to processes |
| receiving the data | transmitting the data |
| matching data to a condition | checking the data to evaluate differences with historical data |
| distributing/forwarding the processing function if the data matches the condition | reporting the data and determining whether modifications to a process are required |
| wherein the processing function is set/configured to be used by an application. | providing instructions to follow or modify the process. |

In short, the Asserted Claims describe computer-performed mental steps that would otherwise have been performed in person, and are patent ineligible just like the claims in *In re Rosenberg*.

Notably, the idea of providing information based on matching a condition has been found to be abstract by both the Patent Trial and Appeal Board (PTAB) and the Federal Circuit. For example, in *Ex Parte Sanjiv Desai*, the PTAB determined that the claimed steps of collecting data, mapping "drugs to biomarkers" based on a "matched data and not matched data," and providing the results of the collection and analysis to be abstract. No. 2019-004988, 2020 Pat. App. LEXIS 8049, *8-9 (P.T.A.B. June 8, 2020). Similarly, in *In re Rudy*, the Federal Circuit determined that the claimed steps of observing water clarity, measuring light transmittance, and electing the color of the hook to be used by matching the observed water conditions to be a patent ineligible abstract idea. 956 F.3d 1379, 1384-85 (Fed. Cir. 2020). Similar to the claims in those cases, the Asserted Claims here are directed to distributing information based on the ***matching a condition***—an idea that both the Federal Circuit and PTAB have held to be abstract.

3.     The Asserted Claims recite merely functional limitations.

The Asserted Claims are not meaningfully different from abstract claims ruled invalid by the Federal Circuit in a series of cases rejecting functional claims. For example, in *SAP Am. v.*

*Investpic, LLC,* the Federal Circuit held that the functional language of "selecting certain information, analyzing it . . ., and reporting or displaying the results" "is all abstract." 898 F.3d 1161, 1167 (Fed. Cir. 2018). Similarly, in *In re TLI Commc'ns LLC Patent Litig.*, the Federal Circuit found claims directed to the classification and storage of information impermissibly abstract where they did not disclose "a specific improvement to computer functionality," but instead recited "use of conventional or generic technology in a nascent but well-known environment." 823 F.3d 607, 611-12 (Fed. Cir. 2016). The court found that instead of inventing a specific solution for doing so, the patent recited "a generic environment in which to carry out the abstract idea of classifying and storing digital images in an organized manner." *Id.* at 611. In *Affinity Labs of Texas, LLC v. DirecTV, LLC*, the Federal Circuit found claims reciting a "network based media managing system" for delivering streaming media from a "media source[]" to a "wireless [] telephone device"" to be directed to the abstract idea of "streaming regional broadcast content to a portable device." 838 F.3d 1253, 1256, 1258 (Fed. Cir. 2016). The claims merely recited "result-focused, functional" limitations that are "frequently held ineligible under section 101. *Id.* at 1265. Finally, in *Two-Way Media v. Comcast Cable Communications, LLC*, the Federal Circuit reiterated that courts must "look to whether the claims in the patent focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." 874 F.3d 1329, 1332, 1337 (Fed. Cir. 2017) (claims that recite a system for streaming data over the internet to be invalid under § 101). The court found that the claims required "functional results," but failed to "sufficiently describe how to achieve these results in a non-abstract way." *Id.* at 1337–38.

Just like the patents discussed in *SAP*, *TLI*, *Affinity*, and *Two-Way Media*, the claims in the Asserted Patents merely recite generic components described only by their functions. For

example, the "server," "processor," "mobile device," and "network" are merely black boxes that perform the non-descript functions of "receiving" and "automatically forwarding" or "distributing." Similarly, the "sensor" and "GPS module" simply refer to well-known generic components. '412 Patent, 15:35-38. And the digital image and media content "processing function" is equally non-descript in how the function is actually performed. Even the "matching" step is described as a bald result in which a "condition" is matched to a non-descript "distribution rule." The claims fail to explain how to structure "the distribution rule," "sensor data," or "GPS location indication" so a processor can compare the information, or how it determines what "processing function" to "distribute" over the network. *Cf. Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1368-69 (Fed. Cir. 2019) (finding functional claim limitations invalid under 35 U.S.C. § 101).

Notably, the Asserted Claims do not even require that the processing function actually be applied to an image—just that it be "set" or "configured" to do so. As such, the basic steps recited by the claims of receiving a processing function based on a condition can easily be performed by a human, and consequently amount to an abstract idea as a matter of law. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011). Because the Asserted Patents are directed to an abstract idea, the first step in the *Alice* inquiry is met.

### B.    The Asserted Claims Do Not Contain an Inventive Concept.

Under *Alice's* second step, claims are valid only if they contain an inventive concept sufficient to transform the claims into a patent-eligible invention. 134 S. Ct. at 2355, 2359. A valid claim must include "additional features" beyond the abstract idea itself, which "requires more than simply stating the abstract idea while adding the words 'apply it.'" *Id*. at 2357 (internal quotations, citations and brackets removed). "[T]he recitation of generic computer components to perform the claimed steps does not provide a transformative inventive concept. *In re Rosenberg*, 813 F.

App'x at 597.   It is not enough to improve an abstract process by invoking a computer merely as a tool for carrying out that process.  *Id*. at 598; *Elec. Power Grp., LLC v. Alstom S.A.,* 830 F.3d 1350, 1354 (Fed. Cir. 2016).  The Asserted Claims in this case invoke computer components such as server, processor, network, mobile device, and sensor, in a generic, functional way, such that "the focus of the claims is not on such an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *Id*.

First, the claims each recite accessing an image or media processing function with a "server" having a "processor." These purported technologies are nothing more than routine and conventional computer components and, thus, fail to provide a transformative concept. *Alice*, 134 S. Ct. at 2359.  Moreover, the presence of "digital" in the limitations "digital image processing function" and "digital media processing function" merely invoke a computer as a tool for carrying out the abstract, and routinely performed by humans, step of altering an image.

Second, the claims recite receiving a "location indication" from a "GPS module" on a "mobile device"—a technology that the inventor admits to be "known in the art."  '412 Patent, 15:35-38.  Implementing GPS technology with mobile devices has been known for decades.  Salen Decl., Exh. 1, 1:65-2:61; *Ex Parte James Bongiorno*, No. 2019-000130, 2020 Pat. App. LEXIS 6527, *18 (P.T.A.B. March 20, 2020) (finding a generic GPS receiver to be "purely routine and conventional"); *Sa v. Nfl Enters.*, No. CV 17-03919-AB(SKx), 2018 U.S. Dist. LEXIS 234455, at *51-52 (C.D. Cal. Mar. 9, 2018) (finding "no inventive concept in . . . sharing [a] location.").

Third, the claims recite "distributing" or "forwarding" the processing function to the mobile device based on the sensor data generic matching a condition.  *See Desai*, No. 2019-004988, 2020 Pat. App. LEXIS 8049, at *8-9 (finding the limitations of mapping information based on a "matched data and not matched data" and providing the results of that analysis to be

abstract); *see also In re Rudy*, 956 F.3d at 1385.   Here, too, the inventor acknowledges that existing technology enabled the "[i]images and videos" to be "transmitted via a network to a remote server for further processing."  '412 Patent, 1:45-49.   These types of generic data-related functions are not enough to save a claim from ineligibility.  *See, e.g., Elec. Power Grp.*, 830 F.3d at 1354-55 (finding no inventive concept in gathering, sending, and presenting desired power grid information in real-time); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) (finding no inventive concept in claimed steps of sending electronic messages over a network, storing test results, and "using a computerized system . . . to automatically determine an estimated outcome and setting a price"); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (transmitting data over a network "with no further specification—is not even arguably inventive.").

Finally, the claims recite that the processing function is set or configured for use by a mobile device application to create an output image.  Notably, the inventor of the Asserted Patents acknowledge that "[c]lient terminals with integrated cameras or image sensors [had already been] widely used," and that "inexpensive images sensors and image processing software became readily available to mobile device manufactures."  '412 Patent, 1:38-44.  This cannot save the claims.

### C.   No claim constructions issues prevent the Court from granting its motion.

The eligibility of the Asserted Claims is an issue ripe for the Court's consideration.  There are no claim construction or factual disputes affecting the *Alice* analysis because no plausible construction of the claims would bring them within the scope of patentable subject matter.[5]

## V.   CONCLUSION

For the foregoing reasons, each of the Asserted Patents is invalid pursuant to 35 U.S.C. § 101.  Snap respectfully requests that the Court grant its Motion to Dismiss.

---

[5] Snap reserves its right to address claim construction issues at the appropriate time under the scheduling order and local rules.

Date: October 13, 2020

SNAP INC.

*/s/ Bradley C. Graveline*
Bradley C. Graveline (6203817)
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
70 West Madison Street, 48th floor
Chicago, Illinois 60602
Office: (312) 499-6316
Cell: (312) 339-4804
Fax: (312) 499-6301
bgraveline@sheppardmullin.com

Steven G. Schortgen *(Pro Hac Vice Pending)*
Jennifer Klein Ayers *(Pro Hac Vice Pending)*
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
2200 Ross Ave, 24th Floor
Dallas, Texas 75201
Office: (469) 391-7400
Fax: (469) 391-7401
sschortgen@sheppardmullin.com
jayers@sheppardmullin.com

Jesse Salen *(Pro Hac Vice Pending)*
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
12275 El Camino Real, Ste. 200
San Diego, CA 92130-4092
Office: (858) 720-8964
Fax: (858) 523-6722
jsalen@sheppardmullin.com

Counsel for SNAP INC.

## <u>CERTIFICATE OF SERVICE</u>

I, Bradley C. Graveline, an attorney, hereby certify that on October 13,

2020, I caused the foregoing MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

to be electronically filed with the Court in accordance with the Court's electronic filing system.

Notice of this filing will be sent to all counsel of record by operation of the Court's electronic

filing system.

By: <u>/s/ Bradley C. Graveline</u>
Bradley C. Graveline (6203817)
SHEPPARD,MULLIN, RICHTER &HAMPTON, LLP
70 West Madison Street, 48th floor
Chicago, Illinois 60602
Office: (312) 499-6316
Cell: (312) 339-4804
Fax: (312) 499-6301
bgraveline@sheppardmullin.com
*Counsel for SNAP INC.*