**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SANDERLING MANAGEMENT LTD., | |
| Plaintiff, | Case No. 1:20-cv-04627 |
| v. | Honorable Judge John Robert Blakey |
| SNAP INC., | |
| Defendant. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS UNDER RULE 12(b)(6)**

i

115979788

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................... 2

      A.      The Asserted Patents ................................................................................. 2

      B.      The USPTO's Prior Consideration and Rejection of Non-Eligibility
            Arguments for the Asserted Patents ......................................................... 3

III.    LEGAL STANDARDS ........................................................................................ 4

IV.     ARGUMENT ........................................................................................................ 5

      A.      Even If Snap's Motion Had Merit—It Does Not—It Is Premature ...................... 5

      B.      *Alice* Step One:  Specific, Patent-Eligible Improvement ........................ 8

      C.      *Alice* Step Two:  Transformativeness ................................................... 12

V.      CONCLUSION .................................................................................................. 15

115979788

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018), *reh'g denied*, 890 F.3d 1354 (Fed. Cir. 2018) ...............5, 6, 7

*Alice Corp. Pty. v. CLS Bank Int'l*,
    573 U.S. 208 (2014)................................................................................................ *passim*

*Allconnect, Inc. v. Consumer Brands, LLC*,
    2018 WL 7377934 (C.D. Cal. Dec. 14, 2018) ..................................................14, 15

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016).................................................................5, 12, 14

*Berkeley*IEOR v. Teradata Operations, Inc.*,
    448 F. Supp. 3d 864 (N.D. Ill. 2020) ...............................................................7, 14

*Berkheimer v. HP Inc.*,
    881 F.3d 1360  (Fed. Cir. 2018), *cert. denied*, 140 S. Ct. 911 (2020) ....................................7

*Card Verification Sols., LLC v. Citigroup Inc.*,
    2014 WL 4922524 (N.D. Ill. Sep. 29, 2014) ....................................................7, 14

*CardioNet, LLC v. InfoBionic, Inc.*,
    955 F.3d 1358 (Fed. Cir. 2020)...............................................................10, 11, 12

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
    880 F.3d 1356 (Fed. Cir. 2018)...........................................................................10

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014)......................................................................5, 14

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016)................................................................... *passim*

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
    879 F.3d 1299 (Fed. Cir. 2018)....................................................................4, 8, 10

*Kove IO, Inc. v. Amazon Web Servs., Inc.*,
    448 F. Supp. 3d 849 (N.D. Ill. 2020) ..............................................................6, 7, 11

*Kubiak v. City of Chi.*,
    810 F.3d 476 (7th Cir. 2016) ..............................................................................6

iii

*Local Intelligence, LLC v. HTC Am., Inc.*,
    2018 WL 1697127 (N.D. Cal. Apr. 6, 2018); .........................................................................11

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016)..............................................................................10, 11

*Microsoft Corp. v. i4i Ltd. P'ship*,
    564 U.S. 91 (2011)............................................................................................................5

*Nagravision A v. NFL Enterprises, LLC*,
    2018 WL 1807285 (C.D. Cal. Mar. 9, 2018) ...........................................................9

*Trading Techs. Int'l, Inc. v. CQG, Inc.*,
    2015 WL 774655 (N.D. Ill. Feb. 24, 2015), *aff'd*, 675 F. App'x 1001 ..................................14

*Trading Techs. Int'l, Inc. v. CQG, Inc.*,
    675 F. App'x 1001 (Fed. Cir. 2017) ...........................................................10, 14

*Upaid Sys., Ltd. v. Card Concepts, Inc.*,
    2019 WL 1331832 (N.D. Ill. 2019) ............................................................7, 14

**Statutes**

35 U.S.C. § 101 .................................................................................................3, 4, 7

**Rules and Regulations**

Federal Rules of Civil Procedure
    Rule 12(b)(6)....................................................................................................5, 6, 7

Federal Rules of  Evidence
    Rule 201(b) ...................................................................................................10

**Other Authorities**

U.S. Patent No.
    9,355,412.......................................................................................................2, 3, 9, 12
    9,639,866.......................................................................................................2, 3, 4
    10,108,986......................................................................................................2, 3, 4

iv

Plaintiff Sanderling Management Ltd. ("Sanderling") submits this brief in opposition to Defendant Snap Inc.'s ("Snap") motion to dismiss (Dkt. Nos. 17 and 18) (the "Motion").

## I.     INTRODUCTION

Snap seeks a premature patent-eligibility determination before claim construction, expert reports, and fact discovery have occurred.  However, in urging this Court to rush to judgment, Snap ignores case law from the Federal Circuit and this Court holding that questions of patent-eligibility should rarely be determined at the pleading stage.  Indeed, patent-eligibility raises issues of fact, and is to be determined at a later stage, on a complete record.

Snap cannot meet its burden to prove Sanderling's patents lack eligible subject matter. The asserted patents specify inventive technological improvements that enable an automatic distribution of digital image- and video-processing functions to groups of mobile devices in a network according to rule-based conditions (e.g., location), where the distribution changes dynamically according to alterations in the logic of one or more rule conditions.  The patents disclose technological advances that overcame problems in the prior art, for example by enabling users to receive processing functions over the network, enabling the distribution of processing functions independent of, and prior to, the creation of the visual content by the user and permitting highly scaled content distribution.  Indeed, the Asserted Patents easily satisfy Step One (patent eligible concept) and Step Two (transformative invention) of the relevant *Alice* test. In this regard, during the prosecution of the Asserted Patents, the U.S. Patent and Trademark Office ("USPTO") considered and *rejected the arguments now raised by Snap*.  In the words of one examiner:  "when considered as an ordered combination, [the claims] add *significantly more* than merely instructions to apply an abstract idea using some unspecified, generic computer" (emphasis added).  Snap's motion is thus without merit and should be denied.

115979788

## II.      BACKGROUND

### A.      The Asserted Patents

The patents at issue are: U.S. Patent Nos. 9,355,412 ("'412 Patent"); 9,639,866 ("'866 Patent"); and 10,108,986 ("'986 Patent;" collectively, "the Asserted Patents"). (Dkt. No. 1 at ¶ 1). Sanderling asserts that Snap infringes Claims 1-12 of the '412 Patent, Claims 1-11 of the '866 Patent, and Claims 1-34 of the '986 Patent (collectively, "the Asserted Claims"). (*Id.* at ¶¶ 30-105). The Asserted Patents share a common specification.

The Asserted Claims are directed to a specific, novel, computerized method and system of distributing, in a targeted manner, relevant digital image processing functions to mobile devices based on their GPS locations (or other conditions). (*Id.* at ¶ 11-12, 23). The prior art did not teach or suggest distributing new editing functions over a network based on a condition. (*Id.*; Caixeiro Decl. at ¶ 12 (Ex. F at 2-3); ¶ 15 (Ex. H at 10-12); ¶ 16 (Ex. I at 3-4); ¶ 18 (Ex. J at 9); ¶ 20 (Ex. L at 2)). The Asserted Claims improved existing technology by "providing a user with location [or specified condition] relevant image processing functions for locally editing images on a client terminal." (*Id.*, Ex. H at 10). Further, the claimed inventions provide an enhanced way to target the distribution of image processing functions at scale and with speed—which could not be achieved prior to the inventions. (Dkt. No. 1 at ¶ 11-12).

Snap uses this patented technology to create and distribute highly lucrative "lenses" and "filters" for use through its Snapchat application. At a high level, lenses and filters are effects and/or modifications that can be added to a photograph or video, which Snap makes available to certain Snapchat users based on conditions such as their geographic location. (*See* Dkt. No. 1 at ¶ 26). Thus, in an example provided in the Complaint, a Snapchat user who is located at a KFC restaurant might be provided with lenses and/or filters relating to a new sandwich that KFC is offering. (*Id.* at ¶ 28).

2

The Asserted Claims set forth specific steps, providing implementation details utilizing specific hardware and software components, to automatically, and in a highly-scalable manner, forward relevant digital image- or video-processing functions to users' phones based on a condition such as GPS location.[1]  (Caixeiro Decl. at ¶¶ 2-5; Dkt. No. 11-12).  The '412 Patent, for example, involves a "distribution rule defining a geographic location,"[2] and sets forth a specific technological configuration involving a "server," "network," "hardware processor," "database storing at least one digital image processing function," "mobile devices," "GPS module," and "GPS location."  (Caixeiro Decl. at ¶ 2.).  The distribution-related claim limitations ensure that relevant digital image processing functions are automatically forwarded to mobile devices with a matching "geographic location" or "sensor data condition."  The specification of the Asserted Patents describes and contextualizes "distribution rule" in specific ways.  (*Id.* at ¶¶ 6-8; *e.g.*, Ex. A at 6:3-14 (describing that the distribution rule "determines that only a group of end users having certain characteristics and/or match a certain requirement").

### B.    The USPTO's Prior Consideration and Rejection of Non-Eligibility Arguments for the Asserted Patents

During the prosecution of the Asserted Patents, the USPTO examiner analyzed the issue (now raised by Snap) of eligibility under 35 U.S.C. § 101 and expressly *determined that claimed inventions were patent-eligible.*  (*Id.* at ¶¶ 9-20 & Exs. D-L).  In case of the '412 Patent, the examiner concluded:  "The recited solution, when considered as an ordered combination, adds

---

[1] Snap's treatment of Claim 1 of each Asserted Patent as representative (Dkt. No. 18 ("Snap Br.") at 2-5) is improper.  It is premature to know which Claims are representative.  There are likely to be claim construction arguments that impact which claims are representative and which impart further reasons for patentability.

[2] The other Asserted Patents also have distribution rules.  The claims of the '866 Patent involve "distributing a digital image processing function … associated with a geographic location;" and the claims of the '986 Patent involve a "distribution rule defining a sensor data condition."  (Caixeiro Decl. at ¶¶ 3-5.).  Thus, while certain Asserted Patents require the distribution rule to relate to a geographic location, other claims recite distribution rules based on other criteria.

significantly more than merely instructions to apply an abstract idea using some unspecified, generic computer." (Caixeiro Decl. at ¶ 12). With respect to the '866 Patent, the examiner stated: "Applicant's claimed invention, as an ordered combination, adds specific limitations other than what is well-understood, routine and conventional in the field, and add[s] unconventional steps that confine the claim to a particular useful application." (*Id.* at ¶ 16). And in case of the '986 Patent, the examiner found "that the claims contain limitations that amount to *significantly more than the abstract idea*, when taken in an ordered combination, and when considering additional limitations and elements." (*Id.* at ¶ 18 (emphasis added)). The examiner further concluded, "meaningful limitations in the claim(s) transform the judicial exception into a patent-eligible application such that the claim amounts to significantly more than the judicial exception itself." (*Id.*)

## III. LEGAL STANDARDS

When a court assesses patent eligibility under 35 U.S.C. § 101 it must engage in a two-step "*Alice*" inquiry. At "Step One," a court determines "whether the claims at issue are directed to a patent-ineligible concept" such as an abstract idea. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (*quoting Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217–18 (2014)). "[S]oftware-based innovations can make 'non-abstract improvements to computer technology' and be deemed patent-eligible subject matter at [Step One]." *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1304 (Fed. Cir. 2018) (*quoting Enfish*, 822 F.3d at 1335-36). Indeed, the Federal Circuit has warned that § 101 must not "create a categorical ban on software patents" because "[m]uch of the advancement made in computer technology consists of improvements to software that, by their very nature, may not be defined by particular physical features but rather by logical structures and processes." *See Enfish*, 822 F.3d at 1339. An "invention's ability to run on a general-purpose computer [does not] doom[] the claims." *Id.* at

1338.  If a court finds that the claims pass the eligibility muster at Step One, it need not proceed to the next step.  *See, e.g.*, *id.* at 1339.

At "Step Two," the elements of each claim are evaluated, "both individually and as an ordered combination," to determine "whether the additional elements transform the nature of the claim into a patent-eligible application of that abstract idea."  *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014).  This second step is the search for an "inventive concept."  *Id.* (*quoting Alice*, 573 U.S. at 134).  "[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces."  *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).  The Step Two analysis can be satisfied when "the specific improvements in the recited computer technology go beyond 'well-understood, routine, conventional activit[ies].'"  *Id.* at 1348 (*quoting Alice*, 573 U.S. at 225).  "Whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact … [to] be proven by clear and convincing evidence."  *Id.* at 1368.  In this regard, the party seeking to establish patent ineligibility bears the burden of proof by the high "clear and convincing evidence" standard.  *Id.* (*citing Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011)).

## IV.   ARGUMENT

### A.   Even If Snap's Motion Had Merit—It Does Not—It Is Premature

Patent eligibility cannot be decided at the Rule 12(b)(6) stage when there are factual allegations that, taken as true, prevent resolving the eligibility question.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018), *reh'g denied*, 890 F.3d 1354, 1355 (Fed. Cir. 2018).  "In deciding a motion to dismiss, the court accepts the well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in favor

of the plaintiff." *Kove IO, Inc. v. Amazon Web Servs., Inc.*, 448 F. Supp. 3d 849, 855 (N.D. Ill. 2020) (*citing Kubiak v. City of Chi.*, 810 F.3d 476, 480–81 (7th Cir. 2016).

Sanderling's Complaint alleges that "the Asserted Patents offer multiple improvements over the prior art," including "creating and distributing high volumes of branded images … to perform [digital image processing] functions at quick speeds for a large and increasing number of users, while at the same time providing a highly intuitive and smooth user experience." (Dkt. No. 1 at ¶ 12). Sanderling's Complaint also alleges that "[e]ach of the Asserted Patents claims technical solutions to enabling dynamic loading of one or more digital branding functions associated with one or more distribution rules, using the distribution rule to target a group of end users, and enabling use of one or more digital branding functions by each member of the end users group." (*Id.* at ¶ 23). Further, as the intrinsic evidence makes clear, the claimed "distribution rule" orchestrates the dynamic loading of relevant image- and video-processing functions on mobile devices over a network, as explained earlier.

When viewed in favor of Sanderling, as required at this stage, Sanderling's well-pled allegations preclude the dismissal of this case. In *Aatrix Software*, the Federal Circuit vacated a Rule 12(b)(6) dismissal under similar circumstances. *See* 882 F.3d at 1123-24. The plaintiff there alleged that the claimed invention (a data processing system that was compatible with multiple third-party applications) was an improvement over prior art databases, which were compatible with only certain applications. *Id.* at 1127. The Federal Circuit held: "Viewed in favor of [the plaintiff], as the district court must at the Rule 12(b)(6) stage, the complaint alleges that the claimed combination improves the functioning and operation of the computer itself. These allegations, if accepted as true, contradict the district court's conclusion that the claimed combination was conventional or routine." *Id.* at 1127-28. The Federal Circuit also agreed with

115979788

plaintiff that the claim term "data file" plausibly captured the invention's improvement over the prior art; it held:  "the 'data file' limitation may reflect, as [the plaintiff] argues, an improvement in the importation of data from third-party software applications … [such that] [i]n light of the allegations made by [the plaintiff], the district court could not conclude at the Rule 12(b)(6) stage that the claimed elements were well-understood, routine, or conventional."  *Id.* at 1129 (internal citations omitted); *Aatrix Software*, 890 F.3d at 1357 (denying panel rehearing and rehearing *en banc* because "[i]f patent eligibility is challenged [on a Rule 12(b)(6) motion], we must apply the well-settled Rule 12(b)(6) standard").

The Federal Circuit reached a similar conclusion in *Berkheimer v. HP Inc.*.  *See* 881 F.3d 1360, 1370 (Fed. Cir. 2018), *cert. denied*, 140 S. Ct. 911 (2020).  The plaintiff there argued that the patented improvement allowed multiple editing functions that eliminated redundancies and improved efficiency of operation.  *Id.* at 1368–70.  The Federal Circuit vacated the district court's summary judgment, cautioning against deciding patent-eligibility without resolving fact issues:

> Whether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination. Whether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art. The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional.

*Id.* at 1369-70.

This Court has, on at least four occasions, denied a motion to dismiss under § 101 by pointing solely to the patentee's pleading allegations.  *See Berkeley*IEOR v. Teradata Operations, Inc.*, 448 F. Supp. 3d 864, 872-73 (N.D. Ill. 2020); *Kove IO*, 448 F. Supp. 3d at 858–60; *Upaid Sys., Ltd. v. Card Concepts, Inc.*, 2019 WL 1331832, at *2-4 (N.D. Ill. 2019); *Card Verification Sols., LLC v. Citigroup Inc.*, 2014 WL 4922524, at *4 (N.D. Ill. Sep. 29, 2014).

At minimum, the Motion raises the following issues that cannot be resolved at this stage but rather require fact discovery, expert discovery, and/or claim construction:

- The proper construction of at least the phrases "distribution rule" and "few seconds or less;"[3]

- The state of the art at the time of the inventions; and

- Whether and to what extent the claimed improvements and limitations (including, without limitation, the distribution rules and the ordered combination of elements) were conventional, routine or well-understood—or, conversely, a significant improvement or transformative.

For this reason alone, Snap's motion should be denied.

### B.   *Alice* Step One:  Specific, Patent-Eligible Improvement

Claims directed to "a specific improvement to the way computers operate" are deemed patent-eligible under *Alice* Step One.  *See Enfish*, 822 F.3d at 1336.  When claims focus on a "specific [] improvement in computer capabilities" as opposed to "an 'abstract idea' for which computers are invoked merely as a tool," the claims are deemed patent-eligible.  *See Finjan*, 879 F.3d 1299, 1303 (*quoting Enfish*, 822 F.3d at 1335-36).

Here, the Asserted Claims focus on a specific improvement:  a particular system and method of automatically distributing relevant digital image processing functions to mobile devices based on their GPS locations (or other conditions), resulting in improved and highly-scalable promotional content distribution.  The Asserted Claims set forth specific ordered steps, provide specific implementation details, and leverage the identified hardware and software

---

[3] Snap tries to sidestep claim construction issues by improperly paraphrasing the claim language (Snap Br. at 4, 8, 11) and pointing to isolated portions of the Common Specification concerning "distribution rule" (*Id.* at 7).  However, claim construction involves consideration of intrinsic evidence, extrinsic evidence, and expert analysis (where proper).  Moreover, the specification portion Snap relies on (*id.*) is not prior art.

components to achieve the specific result of pushing relevant digital image- or video-processing functions to groups of users' phones based on certain conditions. (Caixeiro Decl. at ¶¶ 2-5.). Claim 1 of the '412 Patent, for example, is directed to a "computerized method of distributing a digital image processing function" and specifically recites a "server," "network," "hardware processor," "database storing at least one digital image processing function," "distribution rule," "mobile devices," "GPS module," and "GPS location."[4]  (*Id.* at ¶ 2.).

Several claim limitations also impart the requisite specificity.  For example, the "distribution rule"-related claim limitations ensure that relevant digital image processing functions are auto-forwarded to mobile devices with a matching "geographic location" or "sensor data condition" in a dynamic manner (as opposed to, for example, an indiscriminate blast to any and all devices).  The specification of the Asserted Patents describes and contextualizes the "distribution rule" in precise ways. (Caixeiro Decl. at ¶¶ 6-8; *e.g.*, Ex. A at 6:3-14 ("a rule that determines that only a group of end users having certain characteristics and/or match a certain requirement"); *id.* at 7:4-21:24 (describing flowcharts and use-case illustrations to show the specific architecture, functionality, and operation of the claimed invention)).

The Asserted Claims are also directed to an *improved* distribution method:  a scalable and efficient way for mobile device users to quickly and efficiently share branded images and videos in a targeted manner, which was an improvement over prior distribution methods.  (*See* Dkt. No. 1 at ¶¶ 11, 12, 23).  The USPTO accepted Sanderling's argument during the prosecution of one of the Asserted Patents that the claimed distribution is a *dynamic* system in which new and

---

[4] The Asserted Claims "refer[] to specific hardware or software components," unlike the claim deemed ineligible in Snap's cited case, *Nagravision A v. NFL Enterprises, LLC*.  *See* 2018 WL 1807285, at *17 (C.D. Cal. Mar. 9, 2018).  The *Nagravision* claim was directed generally to the idea of limiting access to information based on location, and the court deemed it ineligible due to reciting "broad, functional terms" [e.g., "location information"] instead of "specific technology" [e.g., "particular modern GPS data."].  *Id.* Not so here.  Snap is wrong that the Asserted Claims recite only functional limitations (Snap Br. at 11-13).

relevant image processing functions are *automatically* provided over a network is both automatic and dynamic—a significant improvement over the prior art *fixed* photo editing functions to be applied by a user on an electronic device.  (Caixeiro Decl., Ex. H at 10-12, Ex. I at 3-4.). [5]

The Federal Circuit has frequently upheld similar software-enabled improvements as patent-eligible, even after the *Alice* decision. *See, e.g.*, *Finjan*, 879 F.3d at 1303; *Enfish*, 822 F.3d at 1336; *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.,* 880 F.3d 1356, 1359 (Fed. Cir. 2018).  For example, *Core Wireless* found *Alice* Step One to be satisfied by claims directed to a mobile device interface displaying a list of commonly used functions so a user could avoid paging through multiple screens of options.  *See* 880 F.3d at 1362–63. The Court reasoned that "[a]lthough the generic idea of summarizing information certainly existed prior to the invention, these claims are directed to a particular manner of summarizing and presenting information in electronic devices … [resulting in] a specific improvement over prior systems, … an improved user interface for electronic devices." *Id.*

The Federal Circuit reached a similar decision in *Trading Techs. Int'l, Inc. v. CQG, Inc.*, which involved an improved user interface for trading stocks that kept stock prices static while the rest of the display was still dynamic, because the patented improvement helped prevent a user from missing his/her intended price at the time of clicking.  *See* 675 F. App'x 1001, 1002–04 (Fed. Cir. 2017); *see also Enfish*, 822 F.3d at 1337 (upholding claims directed to "a self-referential table for a computer database" because it "increased flexibility, faster search times, and smaller memory requirements"); *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) (upholding claims directed to a computerized animation method for

---

[5] The Court may take judicial notice of public prosecution histories of the Asserted Patents.  *See, e.g.*, *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1372–74 (Fed. Cir. 2020); Fed. R. Evid. 201(b).

lip synchronization and facial expressions, which was previously performed by human animators).

Two district court decisions, *Local Intelligence, LLC v. HTC Am., Inc.* and *Kove IO*, are analogous to the claimed invention here. *See* 2018 WL 1697127, at *7 (N.D. Cal. Apr. 6, 2018); 448 F. Supp. 3d at 859. *Local Intelligence* involved claims directed to "refreshing location-relevant communication services on a phone's display by obtaining a current location from a location server, selecting communication services using logic in a datastore, and refreshing the display." *See* 2018 WL 1697127, at *7. The court upheld the claims at Step One because they recited "a specific manner of limiting the information which should be displayed" and covered specific improvements over prior user interfaces. *Id.* at *6–8. Like the claims at issue in *Local Intelligence*, the Asserted Claims here recite "a specific manner of limiting the information which should be displayed," i.e. presenting image/video-processing functions relevant to a user's location (or other condition) based on an orchestrated interplay among technological pieces as recited in the claims. *Id*; *see also Kove IO*, 448 F.Supp.3d at 857–59 ("dynamic" data storage system in which information can be stored in multiple servers was a specific, non-abstract improvement over prior "static" systems").

Snap's brief contends that the Asserted Claims simply focus on the "well-established idea of distributing information based on meeting a condition"—at times likening the patented invention to direct mailers and localized ads. (Snap Br. at 2-5, 9-13). Snap is wrong, and by characterizing the Asserted Claims at "a high level of abstraction and untethered from the language of the claims," Snap asks the Court to oversimplify the claims in a manner that the Federal Circuit has consistently rejected. *See Enfish*, 822 F.3d at 1337-38; *see also McRO*, 837 F.3d at 1313; *CardioNet*, 955 F.3d at 1371; *accord Kove IO*, 448 F. Supp. 3d at 859 (refusing to

adopt the defendant's "dismissive characterization" of the claims).[6]

Snap is also wrong that the steps of the Asserted Claims "can easily be performed by a human." (Snap Br. at 13). There is no way a human can perform the high-end computation required here—certainly not for "a plurality of mobile devices" in a network in a dynamic manner as claimed. *See, e.g.*, *CardioNet*, 955 F.3d at 1371 (observing that "it is difficult to fathom how doctors mentally or manually used 'logic to identify [specific heartbeat patterns]' as required by [the claim]" to detect and distinguish atrial fibrillation and atrial flutter). Thus, the Asserted Claims are eligible under Step One, and the Court need not proceed to Step Two. *See, e.g.*, *Enfish*, 822 F.3d at 1339.

### C.   *Alice* Step Two:  Transformativeness

The Asserted Claims survive at Step Two as well because they recite an ordered combination of steps that, taken together, amounts to significantly more than routine and conventional use of computers. *See Bascom*, 827 F.3d at 1349–52. Claim 1 of the '412 Patent, for example, involves the steps of:  (i) *using* a server (over a network) having a database of at least one image processing function associated with a distribution rule defining a geographic location; (ii) *receiving* the GPS location indications of mobile devices over the network; (iii) *matching* the GPS location indications with the geographic location defined by the distribution rule; (iv) *automatically forwarding* digital image processing functions to the mobile devices based on the match; and (v) where the forwarded digital image processing function is *set to be executed* on an application on the mobile devices to create an output image. (Caixeiro Decl. at ¶ 2). Depending on their location (or other condition), the mobile device users receive relevant image processing functions in real time. That enhances the distribution of the promotional

---

[6] Snap's baseless oversimplification of the Asserted Claims is reflected in the cases it cites (Snap Br. at 8-13), all of which involved conventional, mental steps using an internet-connected computer without more.

content in a way that supplies an inventive step:  the Asserted Claims make a significant leap over prior art methods of *fixed* photo editing functions to be applied *by a user* on an electronic device by claiming the distribution of new, *relevant* image processing functions *automatically* and *dynamically* over a network—which, in turn, allows for increased scale of content distribution, together with a highly intuitive and smooth user experience, that could not be accomplished in prior systems.  (Dkt. No. 1 at ¶¶ 11-12; Caixeiro Decl., Ex. H at 10-12.).  The scale and the smooth user experience are achieved, in part, by de-linking the content and the processing function:  an image or a video need not be taken for a relevant processing function to appear on a user's screen.[7]  Indeed, as Snap concedes, "the Asserted Claims do not actually require applying the overlay to an image, but just providing the overlay."  (Snap Br. at 10).

The inventive combination of the Asserted Claims' steps is further illustrated by Figure 2 in the common specification (reproduced below):



FIG. 2

(Caixeiro Decl. at ¶ 7, Ex. A at 10:16-11:67 (explaining how the components laid out in FIG. 2 interact with one another to execute image branding function distribution, including

---

[7] Relatedly, the Court should decline Snap's invitation to adjudicate at this stage the relevance of a *single* asserted prior art reference (Snap Br. at 6-7, 14; Dkt. 18-1 at Exh. 1) out-of-context and before invalidity contentions, claim construction, and expert discovery.

"dynamically chang[ing] the branding functions and/or filters").  Implementation of the claimed "distribution rule" to target certain individuals with specific image processing functions in a dynamic fashion fundamentally alters the original information (i.e., GPS location or other condition), and that is sufficiently transformative under Step Two.  At the very least, therefore, the inventive programming captured by the limitation "distribution rule" in combination with the other components of the Asserted Claims provides the requisite inventive concept.

The Federal Circuit has frequently upheld similar arrangements as patent-eligible at Step Two.  *See, e.g.*, *Trading Techs.*, 675 F. App'x at 1004–06; *Bascom*, 827 F.3d at 1349–52; *DDR Holdings*, 773 F.3d at 1257–59.  For example, *DDR Holdings* held that claims directed to a "hybrid website" displaying a third party merchant's product information while retaining the "look and feel" of the host website were patent-eligible at Step Two.  *See* 773 F.3d at 1257–59. The Court explained that the claimed steps of storing visually perceptible elements of numerous host websites in a database, activating by a visitor of a third party website (by clicking on it) available on a host website, and instructing the Internet to serve the visitor with the hybrid webpage were—"taken together as an ordered combination"—inventive.  *Id.*  Similarly, *Bascom* upheld claims involving the steps of receiving at the ISP server a request to access a website, identifying the requested website, applying a filtering mechanism specific to the user requesting the website, and determining whether to grant access to the website.  *See* 827 F.3d at 1345.

District courts have likewise deemed similar combinations and arrangements transformative.  *See e.g.*, *Berkeley\*IEOR*, 448 F. Supp. 3d at 873; *Upaid*, 2019 WL 1331832, at *3; *Trading Techs. Int'l, Inc. v. CQG, Inc.*, 2015 WL 774655, at *5 (N.D. Ill. Feb. 24, 2015), *aff'd*, 675 F. App'x 1001; *Card Verification*, 2014 WL 4922524, at *5.  *Allconnect, Inc. v. Consumer Brands, LLC*, 2018 WL 7377934, at *6–7 (C.D. Cal. Dec. 14, 2018) is particularly

14

analogous.  *See* 2018 WL 7377934, at *1–3, 6-7.  There, the patent was directed to sorting and analyzing third party products by geographical location (and other conditions) and then providing product recommendations based on a user's geographic location and preferences.  *Id.* at *1–3.  The court found that the "inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces" and that "specific method of filtering Internet content was not as a matter of law conventional or generic."  *Id.* at *6–7.  The court therefore denied the defendant's motion to dismiss, "given the express recitation of databases [in the claims] and the allegations that the claims entail an unconventional technological solution. *Id.* at *7.  Similarly, Snap's Motion should be denied because the Asserted Claims implement a "non-conventional and non-generic arrangement" of technological pieces.  *Id.*

Accordingly, as discussed in Section II(B), above, the USPTO expressly considered the issue of patent-eligibility and concluded that the Asserted Claims were patent-eligible at Step Two.[8]  (*See, e.g.*, Caixeiro Decl. at ¶ 16 ("Applicant's claimed invention, as an ordered combination, adds specific limitations *other than what is well-understood, routine and conventional* in the field, and add[s] *unconventional steps* that confine the claim to a particular useful application.") (emphasis added).  Particularly at this early procedural stage, there is no basis for the Court to deviate from the USPTO's findings.

V.    **CONCLUSION**

For all the foregoing reasons, Snap's motion to dismiss should be denied.

---

[8] The cases cited by Snap for Step Two (Snap Br. at 13-15) are all distinguishable because they involved automating abstract or conventional processes without incorporating an inventive step.

Date: November 23, 2020


SANDERLING MANAGEMENT LTD.

*/s/  Manny J. Caixeiro*

Timothy J. Carroll (No. 6269515)
Catherine N. Taylor (No. 6327677)
Jaimin H. Shah (No. 6322814)
DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, ILL 60606
Telephone: (312) 876 8000
Fax: (312) 876 7934
tim.carroll@dentons.com
catherine.taylor@dentons.com
jaimin.shah@dentons.com

Manny J. Caixeiro (*pro hac vice*)
Katherine R. McMorrow (No. 6321349)
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017
Telephone: (213) 623 9300
Fax: (213) 623 9924
manny.caixeiro@dentons.com
kate.mcmorrow@dentons.com

*Attorneys for Plaintiff Sanderling Management Ltd.*

115979788

## CERTIFICATE OF SERVICE

I hereby certify that, on November 23, 2020, a true and correct copy of the foregoing document was filed electronically using the CM/ECF system.  Under Local Rule CV-5(a), the notice of electronic filing that issued through the CM/ECF system constituted service on all counsel of record.

*/s/  Manny J. Caixeiro*

_____

Manny J. Caixeiro

115979788