**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SANDERLING MANAGEMENT LTD., | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:20-cv-04627 |
| | ) | |
| v. | ) | Honorable Judge John Robert Blakey |
| | ) | |
| SNAP INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT SNAP INC'S REPLY IN SUPPORT OF**
**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    ARGUMENT ........................................................................................................1

    A.    Sanderling Fails to Identify a Material Factual Dispute. ........................2

        1.    Sanderling does not propose claim constructions that would be material to the Court's patent eligibility analysis. ........................3

        2.    Sanderling does not identify a material dispute over the state of the art. .................................................................................................4

        3.    Sanderling does not identify a material dispute over the alleged improvement. .............................................................................5

    B.    *Alice* Step One: The Asserted Claims are Directed to an Abstract Idea. ................7

        1.    The Asserted Claims fail Step One of *Alice*. ................................8

        2.    The Asserted Claims do not improve the computer itself.........10

        3.    Sanderling relies on inapposite authority..................................11

        4.    Sanderling's critiques of Snap's Step One analysis lack merit................13

    C.    *Alice* Step Two: The Asserted Claims Do Not Recite an Inventive Concept. ..........................................................................................14

III.    CONCLUSION...................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Aatrix Software, Inc. v. Green Shades Software, Inc.*
    882 F.3d 1121 (Fed. Cir. 2018)..................................................................................3, 5, 6, 7

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l.*
    134 S. Ct. 2347 (2014).............................................................1, 2, 5, 7, 8, 10, 11, 13, 14, 15

*Allconnect, Inc. v. Consumer Brands, LLC*
    2018 WL 7377934 (C.D. Cal. Dec. 14, 2018) .................................................................14, 15

*Berkheimer v. HP Inc.*
    890 F.3d 1369 (Fed. Cir. 2018)..........................................................................................2

*Boar's Head Corp. v. DirectApps, Inc.*
    No. 2:14-cv-01927-KJM-KJN, 2015 WL 4530596 (E.D. Cal. July 27, 2015)..........................3

*BSG Tech LLC v. Buyseasons, Inc.*
    899 F.3d 1281 (Fed. Cir. 2018)..........................................................................................1

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*
    776 F.3d 1343 (Fed. Cir. 2014)..........................................................................................2

*Core Wireless Licensing S.A.R.L. v. LG Elcs., Inc.*
    880 F.3d 1356 (Fed. Cir. 2018)...................................................................................11, 12

*Customedia Techs., LLC v. Dish Network Corp.*
    951 F.3d 1359 (Fed. Cir. 2020)...........................................................................5, 10, 11, 14

*DDR Holdings, LLC v. Hotels.com, L.P.*
    773 F.3d 1245 (Fed. Cir. 2014).....................................................................................14, 15

*Elec. Commun. Techs., LLC v. ShoppersChoice.com, LLC*
    958 F.3d 1178 (Fed. Cir. 2020)..........................................................................................6

*Elec. Power Grp., LLC v. Alstom S.A.*
    830 F.3d 1350 (Fed. Cir. 2016)..........................................................................................8

*Enfish, LLC v. Microsoft Corp.*
    822 F.3d 1327 (Fed. Cir. 2016)........................................................................................11

*Finjan v. Blue Coat Systems*
    879 F.3d 1299 (Fed. Cir. 2018)........................................................................................11

*Genetic Techs. Ltd. v. Merial L.L.C.*
    818 F.3d 1369 (Fed. Cir. 2016)........................................................................2, 5

*Intellectual Ventures I v. Symantec Corp.*
    838 F.3d 1307 (Fed. Cir. 2016)............................................................................4

*iSentium, LLC v. Bloomberg Fin. L.P.*
    343 F. Supp. 3d 379 (S.D.N.Y. 2018)................................................................13

*Kove IO, Inc. v. Amazon Web Servs., Inc.*
    448 F. Supp. 3d 849 (N.D. Ill. 2020) ............................................................11, 12

*Local Intelligence, LLC v. HTC Am., Inc.*
    2018 WL 1697127 (N.D. Cal. Apr. 6, 2018) .....................................................11

*In re Rosenberg*
    813 F. App'x 594 (Fed. Cir. 2020) ................................................................9, 13

*In re Rudy*
    956 F.3d 1379 (Fed. Cir. 2020)............................................................................9

*Ex Parte Sanjiv Desai*
    No. 2019-004988, 2020 ......................................................................................9

*Synopsys, Inc. v. Mentor Graphics Corp.*
    839 F.3d 1138 (Fed. Cir. 2016)............................................................................4

*Yanbin Yu v. Apple Inc.*
    392 F. Supp. 3d 1096 (N.D. Cal. 2019) ...........................................................2, 6

<u>Statutes</u>

35 U.S.C. § 101.................................................................................1, 2, 3, 4, 5, 13, 15

35 U.S.C. § 102.............................................................................................................4

35 U.S.C. § 103.............................................................................................................4

<u>Other Authorities</u>

Fed. R. Civ. P. 12(b)(6)............................................................................................2, 3

Rule 12 .....................................................................................................................2, 5

Defendant Snap Inc. ("Snap") submits the following Reply in support of its Motion to Dismiss Plaintiff Sanderling Management LTD's ("Sanderling's") Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion") for failure to state a claim upon which relief can be granted.

## I.     <u>INTRODUCTION</u>

In its Opposition, Sanderling attempts to manufacture a material dispute over factual issues and improperly reads limitations from the Asserted Patents' specifications into the claims themselves to support its tenuous argument that the Asserted Patents claim alleged "improvements in computer capabilities" that would save them from being deemed unpatentable pursuant to 35 U.S.C. § 101.  As the Federal Circuit instructs, the Court should ignore Sanderling's improper attempt to hunt for patent eligible subject matter outside of the issued claims themselves.  *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1286 (Fed. Cir. 2018).  A proper analysis, as Snap presented in its Motion, reveals that the Asserted Claims are directed to the plainly abstract idea of providing information (i.e., a digital image processing function or a media content processing function) based on the satisfaction of a condition.  The Asserted Claims, therefore, fail to recite any inventive concept apart from an abstract idea and, therefore, are invalid as a matter of law. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l.*, 134 S. Ct. 2347 (2014).

## II.    <u>ARGUMENT</u>

Sanderling's Opposition presents three arguments: (1) the validity of the Asserted Patents should not be decided before the Court resolves certain factual issues; (2) the Asserted Claims allegedly recite improvements to computer technology; and (3) the Asserted Claims allegedly "recite an ordered combination of steps that . . . amounts to significantly more than routine and conventional computers."[1]  (Dkt. 34 at 1.)  Sanderling is wrong on all accounts.

---

[1] Sanderling also argues that Snap improperly uses the independent Asserted Claims as representative for purposes of Snap's Motion.  Ironically, Sanderling's own analysis in its Opposition focuses only on the

### A.      Sanderling Fails to Identify a Material Factual Dispute.

Sanderling contends that "patent-eligibility raises issues of fact, and is to be determined at a later stage [of the litigation than a Rule 12 motion], on a complete record." (*Id.*)  But that is not the law.  Indeed, "[t]he Federal Circuit has repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *Yanbin Yu v. Apple Inc.*, 392 F. Supp. 3d 1096, 1102 (N.D. Cal. 2019) (citing *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016) (citations omitted))); *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (patent validity under Section 101 is properly decided on a motion to dismiss when the asserted claims, read most favorably to the patent holder, still describe an abstract idea).  "[E]valuation of a patent claim's subject matter eligibility under § 101 can proceed even before a formal claim construction." *Id.* (citing *Genetic Techs.,* 818 F.3d at 1373-74).  "[A] patentee cannot avoid dismissal for ineligible claims purely on the basis of conclusory or generalized statements . . . ."  *Id.* (citing *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019); *Berkheimer v. HP Inc.*, 890 F.3d 1369, 1373 (Fed. Cir. 2018)).

Here, Sanderling argues that there are three issues of fact "that cannot be resolved at this stage": (1) claim construction of the phrases "distribution rule" and "few seconds or less"; (2) "the state of the art at the time of the inventions"; and (3) whether alleged claimed improvements and limitations  "were conventional, routine or well-understood," or "transformative."  (Dkt. 34 at 8).  But, even if taken as true, the alleged disputed facts Sanderling identifies are overly generalized and not material to the patentability of the Asserted Claims pursuant to Section 101.

---

independent claims.  Moreover, Sanderling fails to identify any dependent claim that amounts to significantly more than the abstract idea of providing information based on satisfying a condition.  That is because none of the dependent claims provide meaningful limitations that would meet the patentability threshold of *Alice*.

1. <u>Sanderling does not propose claim constructions that would be material to the Court's patent eligibility analysis.</u>

Sanderling's contention that the terms "distribution rule" and "few seconds or less" require constructions from the Court prior to determining patent eligibility pursuant to Section 101 (Dkt. 34 at 8) finds no support in the law and the facts.  To the extent "there are claim construction disputes at the Rule 12(b)(6) stage, . . . the court must proceed by adopting the non-moving party's constructions."  *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).  Alternatively, "the court must resolve the disputes to whatever extent is needed to conduct the § 101 analysis."  *Id.*

As an initial matter, Sanderling fails to offer any proposed construction of those terms. (Dkt. 34 at 5-8.) Sanderling's attempt to derail Snap's Motion without even meeting its threshold burden of proof should be rejected out of hand.  *Aatrix*, 882 F.3d at 1125; *Boar's Head Corp. v. DirectApps, Inc.*, No. 2:14-cv-01927-KJM-KJN, 2015 WL 4530596, *7 (E.D. Cal. July 27, 2015) ("Although it is defendants' burden to show ineligibility, a court should look to the plaintiff to show some factual dispute requiring claim construction.") (citing *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 Fed. App'x. 988, 992 (Fed. Cir. 2014)).   Ironically, in a footnote, Sanderling complains that Snap did not attempt to construe these terms.  (Dkt. 34 at FN3.)  The fact that neither party proposed claim constructions for these terms is illustrative of their insignificance to the Court's task at hand of determining whether the claims are patent eligible. Consequently, the Court need not burden itself with resolving Sanderling's phantom claim construction dispute to decide Snap's Motion.  Furthermore, Sanderling does not even attempt to explain how construing these limitations would affect the Court's patent eligibility analysis pursuant to Section 101.  Sanderling's failure to provide any proposed construction or explain its non-existent construction's importance to the Court's section 101 analysis is procedurally fatal to

its opposition.  Sanderling's failure to meet its burden of proof amounts to an implicit admission that the construction of these terms has no impact on the Court's patent eligibility analysis.

Despite Sanderling's naked assertions, there really is no dispute over how the Asserted Claims should be characterized for purposes of Snap's Motion.  As Sanderling itself admits: "[t]he Asserted Claims are directed to a . . . computerized method and system of distributing, in a targeted manner, relevant digital image processing functions to mobile devices based on their GPS locations (or other conditions)." (Dkt. 34 at 2.)  This characterization of the Asserted Claims is entirely consistent with how Snap characterized the claims in its Motion.   (Motion at 1.) Accordingly, no claim construction dispute is material to Snap's Motion.

2.  <u>Sanderling does not identify a material dispute over the state of the art.</u>

Sanderling argues that the Court must resolve facts about "[t]he state of the art at the time of the invention."  (Dkt. 34 at 8.)  Sanderling's argument is a red herring and confuses a Court's obligation to determine patent eligible subject matter under 35 U.S.C. § 101 with a determination of whether prior art in the field renders the Claims invalid as anticipated or obvious under 35 U.S.C. §§ 102 and 103.  Snap's Motion seeks *only* a determination of patent eligibility under 35 U.S.C. § 101.  *See Intellectual Ventures I v. Symantec Corp.*, 838 F.3d 1307, 1315 (Fed. Cir. 2016) ("The 'novelty' of any element or steps in a process, or even of the process itself, is of ***no relevance in determining whether the subject matter of a claim falls within the § 101*** categories of possibly patentable subject matter." (emphasis supplied)); *see also Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) ("The search for a § 101 inventive concept is thus distinct from demonstrating § 102 novelty.").  As such, factual findings about the prior art do not impact a Section 101 analysis and need not be resolved at this time.  Furthermore, Sanderling fails to identify with any particularity an actual dispute over the state of the art that would be material to the Court's analysis under Section 101.  That is because no such dispute exists, and, more

-4-

importantly, they do not impact the Court' patent eligibility analysis under Section 101.

### 3. Sanderling does not identify a material dispute over the alleged improvement.

Finally, Sanderling argues that the Court must resolve a factual dispute as to the "extent the claimed improvements and limitations (including, without limitation, the distribution rules and the ordered combination of elements) were conventional, routine or well-understood—or, conversely, a significant improvement or transformative." (Dkt. 34 at 8.)  Once again, Sanderling's argument misstates the record and misapplies controlling law.  Indeed, courts routinely resolve these fundamental questions under the *Alice* test as a matter of law at the Rule 12 motion stage. *See Genetic Techs*, 818 F.3d at 1373-74; *see also Aatrix*, 882 F.3d at 1125.

Sanderling's argument in this regard focuses on conclusory allegations from its Complaint that "the Asserted Claims offer multiple improvements over the prior art," including "creating and distributing high volumes of branded images . . . to perform [digital image processing] functions at quick speeds for a large and increasing number of users, while at the same time providing a highly intuitive and smooth user experience," and "[e]ach of the Asserted Patents claims technical solutions to enabling dynamic loading of one or more digital branding functions associated with one or more distribution rules . . . ." (Dkt. 34 at 6.)  But, Sanderling does not explain how these alleged improvements would change the outcome of Snap's Motion.

Indeed, even if taken as true, Sanderling's so-called "improvements" are not directed to improving the computer itself, and thus, do not turn the otherwise abstract claims into patent-eligible subject matter.  *Customedia Techs., LLC v. Dish Network Corp.* case. 951 F.3d 1359, 1365 (Fed. Cir. 2020) (finding claims that recited a "data delivery system for providing automatic delivery of . . . specifically identified advertising data," to be unpatentable, even in view of Customedia's argument that the claims "improved speeds and efficiencies" of the system's ability to deliver the advertising data, because the claims "merely improve[d] a fundamental practice or

abstract process by invoking a computer merely as a tool.").  In other words, just because the distribution rule recited in the Asserted Claims allegedly improves the speed at which digital image processing functions can be distributed to mobile devices based on meeting a condition, Sanderling does not allege, ***nor do the claims recite***, a mechanism for improving the actual performance of the computer components recited in the claims.  Nor does Sanderling attempt to explain how the so-called "multiple improvements" are achieved by the Asserted Claims.  Remarkably, apart from merely copying two vague and conclusory allegations from paragraphs 12 and 23 of its Complaint into its Opposition, Sanderling provides only one additional averment that "the intrinsic evidence makes clear [that] the claimed 'distribution rule' orchestrates the dynamic loading of relevant image- and video-processing functions on mobile devices over a network."  (Dkt. 34 at 6.)  But, Sanderling does not identify the intrinsic evidence to which it is refers, nor does Sanderling explain how the Asserted Claims implement the so-called "dynamic loading" step, which ***is not even recited*** by the claims.[2]  Sanderling fails to tie the unclaimed "dynamic loading" process to any functionality of the server or mobile device that are recited by the claims.  As such, Sanderling "cannot avoid dismissal for [its] ineligible claims" by making conclusory, generalized, fanciful, and exaggerated allegations about "multiple improvements" of speed and "dynamic loading" without tying such improvements to the computer itself.  *Yanbin Yu*, 392 F. Supp. 3d at 1102.

Sanderling relies heavily on the *Aatrix* case in support of its misguided argument.  (Dkt. 34 at 6, citing *Aatrix,* 832 F.3d at 1123-24.)  *Aatrix* actually supports Snap's position.  In *Aatrix*, the Federal Circuit held that the plaintiff's allegation "that the data file is directed to an improvement in importing data from third-party software applications" supported the conclusion

---

[2] The USPTO's determination of patent eligibility during prosecution "bear[s] no relationship to the subject matter to which [the Asserted Claims are] directed" and does not "shield the patent's claims from Article III review for patent eligibility." *Elec. Commun. Techs., LLC v. ShoppersChoice, LLC*, 958 F.3d 1178, 1183 (Fed. Cir. 2020)

that the claims were "directed to *an improvement in the computer technology* itself and not directed to generic components performing conventional activities."  832 F.3d at 1127 (emphasis added).   In contrast, as explained above, Sanderling does not allege, nor do the Asserted Claims recite, any mechanism by which the performance of the claimed generic computer components are actually improved by the claimed distribution rule.  Unlike in *Aatrix*, where the claims directly recite system-level improvements to "a form file," "a form file creation program that imports a background image from an original form," "a data file," and "a form viewer," the Asserted Claims here merely apply a distribution rule – the satisfying of a condition – to trigger a transmission of information to a mobile device.  Indeed, postal carriers have applied this same distribution rule for centuries – they deliver the mail based on the address on the envelope.  It is not rooted in an improvement to the operation of the computer, nor does Sanderling make any colorable argument to the contrary.  Sanderling's phantom attempt to manufacture a dispute over claim construction, the state of the art at the time of patenting, or naked allegations in its Complaint about performance improvements, even if resolved in Sanderling's favor, do not impact the determination that the Asserted Claims are directed to a patent ineligible abstract idea.

## B.   *Alice* Step One: The Asserted Claims are Directed to an Abstract Idea.

Sanderling conspicuously abstains from raising any substantive counter-arguments addressing the heart of Snap's patentability analysis under Step One of *Alice* – namely, that the idea of providing information to a device based on satisfying a condition has been deemed abstract as a matter of law by the Federal Circuit.  Indeed, Sanderling does not attempt to distinguish any of the many precedential and persuasive cases Snap cited to demonstrate the ineligibility of the Asserted Claims.  Instead, Sanderling relies on its misguided argument that "the Asserted Claims focus on a specific improvement: a particular system and method of automatically distributing relevant digital image processing functions to mobile devices based on their GPS locations (or

other conditions), resulting in improved and highly-scalable promotions content distribution." (Dkt. 34 at 8.) Sanderling further argues that the "Asserted Claims are also directed to an improved distribution method: a scalable and efficient way for mobile device users to quickly and efficiently share branded images and videos in a targeted manner, which was an improvement over prior distribution methods." (*Id*.)  However, Sanderling does not explain how the alleged benefits improve the operation of the computer itself, which the Federal Circuit makes clear is required. And, the Asserted Claims plainly recite no such improvement.

1.  <u>The Asserted Claims fail Step One of *Alice*.</u>

As discussed in detail in Snap's Opening Brief, the Asserted Claims are directed to the well-established abstract idea of providing information (*i.e.*, a digital image processing function or a media content processing function) based on the satisfaction of a condition (i.e., matching a location or matching a sensor condition).  (Dkt. 18 at 9.)  As such, the Asserted Claims merely perform abstract mental steps on generic computer components such as a "server," a "hardware processor," a "network," a "database," a "sensor," and/or a "GPS module."   Remarkably, Sanderling identifies this same list of generic computer components in describing the platform upon which the claimed "computerized method of distributing a digital image processing function" is implemented.  (Dkt. 34 at 9.)  Sanderling also proudly agrees with Snap that the Asserted Claims merely require providing the information, and do not actually require using or applying the digital image or media content processing function in any way.   (Dkt. 18 at 10; Dkt. 34 at 13.) Sanderling's concession is fatal.  As it admits, the Asserted Claims merely recite implementing an abstract idea using generic computer equipment, and therefore, fall directly into the category of abstract subject matter that the Supreme Court and the Federal Circuit deem unpatentable.  *Alice*, 134 S. Ct. at 2357; *Elec. Power Grp., LLC v. Alstom S.A.,* 830 F.3d 1350, 1354 (Fed. Cir. 2016).

Sanderling does not dispute that the Asserted Claims are analogous to claims found

ineligible in *In re Rosenberg*, 813 F. App'x 594, 598 (Fed. Cir. 2020).  Specifically, the Asserted Claims are directed to the abstract idea of providing information based on the satisfaction of a condition (e.g., the location of the device that captured the media content)  by (i) using or accessing a media content processing function with a server; (ii) receiving data from a sensor on a mobile device; and (iii) transmitting the media content processing function to the mobile device based on a match between the sensor data and a condition; (iv) wherein the media content processing function is set or configured to be used by an application on the mobile device to create a processed output image.  Similarly, the ineligible claims at issue in *In re Rosenberg* recited "collecting data" comprising "performance metrics with respect to [the] clinical trial," "transmitting the data from [a] remote site to a processing location," automatically "checking the transmitted data . . . to assess the consistency of the data with respect to other collected data" by comparing current and historical data sets, "electronically reporting the data," "determining" if a notification was required, and "providing instructions, based on" that determination.  *Id*.  The Federal Circuit determined that the "claims are directed to the basic idea of deciding whether to fine-tune a given system . . . based on reviewing the system's performance data."  *Id*. at 596.  Accordingly, the Federal Circuit held that the claims were directed to an abstract idea because they described "computer-performed mental steps that would otherwise have been performed in person to assess and respond to performance measures in the field."  *Id*.  Just as in *In re Rosenberg*, the Asserted Claims describe patent-ineligible computer-performed mental steps.

Snap cited two additional exemplary cases in its opening brief: *Ex Parte Sanjiv Desai*, No. 2019-004988, 2020 Pat. App. LEXIS 8049, *8-9 (P.T.A.B. June 8, 2020) and *In re Rudy*, 956 F.3d 1379, 1384-85 (Fed. Cir. 2020).  The claims at issue in those cases were directed to providing information based on "matched data" or a "matching condition," and were found to be patent

ineligible.  Tellingly, Sanderling does not even attempt to distinguish any of the authority cited by Snap in the Step One of *Alice* section of the Motion.

2. <u>The Asserted Claims do not improve the computer itself.</u>

Although Sanderling regurgitates a handful of allegations from its Complaint regarding how the distribution rule recited in its claims provides an improved speed and scalability for distributing media content processing functions, Sanderling makes no attempt to tie those improvements to the operation of the computer itself.  Sanderling specifically argues that the "distribution rule" improves speed and scalability by "orchestrating the dynamic loading of relevant image- and video-processing functions on mobile devices over a network" and "ensure[s] that relevant digital image processing functions are auto-forwarded to mobile devices with a matching location/sensor data condition in a dynamic manner, as opposed to an incriminate blast to all devices."  (Dkt. 34 at 6, and 8.)  However, not only does Sanderling read limitations into the claims that are not recited (i.e., "dynamic loading"), but Sanderling also fails to explain how such a filtering rule, which is standard fare in computer technology, actually improves the speed at which the digital image or media content processing functions are distributed.

More importantly, and fatal to Sanderling's Opposition, the Federal Circuit has squarely rejected the same argument about the same type of alleged improvements recited by analogous claims in the *Customedia* case. 951 F.3d at 1364-65.  The claims at bar in that case recited a "data delivery system for providing automatic delivery of . . . specifically identified advertising data," in which the "advertising data is received and processed by a 'programmable local receiver unit,' which includes at least one 'individually controlled and reserved advertising data storage section adapted specifically for storing the specifically identified advertising data." *Id*.  Just as Sanderling does here, *Customedia* argued that "the claimed invention improves the data delivery system's ability to store advertising data, ***transfer data at improved speeds and efficiencies***, and prevent

system inoperability due to insufficient storage." *Id.*  However, the Federal Circuit squarely rejected *Customedia*'s argument, finding that, "[e]ven if we accept *Customedia's* assertions, the claimed invention merely improves the abstract concept of delivering targeted advertising using a computer only as a tool.  This is not what the Supreme Court meant by improving the functioning of the computer itself . . . ." *Id.*  The Federal Circuit's result equally applies here.

3. <u>Sanderling relies on inapposite authority.</u>

Sanderling relies on a handful of readily distinguishable cases for the proposition that the Federal Circuit has found certain "software-enabled improvements" to be "patent-eligible, even after the *Alice* decision."[3] (Dkt. 34 at 10.)  The claims discussed in each of these cases fundamentally differ from the Asserted Claims here.  For example, in *Finjan*, the Federal Circuit found claims that recited a behavior-based virus scanning method were directed to patent eligible subject matter because they "employ[ ] a new kind of file that enables a computer security system to do things it could not do before," including "accumulat[ing] and utiliz[ing] newly available, behavior-based information about potential threats." 879 F.3d at 1305.  The claims were "therefore directed to a non-abstract improvement in functionality, rather than the abstract idea of computer security writ large." *Id.*  Similarly, in *Enfish*, the Federal Circuit found claims that recited a "self-referential table for a computer database" eligible under step one because the claims were directed to a particular improvement in the computer's functionality, namely, an improved database.  822 F.3d at 1336.  And, the claims in *Core Wireless* were directed to an improved user interface that displayed content in a new way by displaying data of interest in a summary window

---

[3] Sanderling specifically cites to *Finjan v. Blue Coat Systems*, 879 F.3d 1299, 1336 (Fed. Cir. 2018); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016); *Core Wireless Licensing S.A.R.L. v. LG Elcs., Inc.*, 880 F.3d 1356, 1362-63 (Fed. Cir. 2018); *Trading Techs. Int'l, v. CQG, Inc.*, 675 App'x 1001, 1002-04 (Fed. Cir. 2017); *Local Intelligence, LLC v. HTC Am., Inc.*, 2018 WL 1697127, at *7 (N.D. Cal. Apr. 6, 2018); and *Kove IO, Inc. v. Amazon Web Servs., Inc.*, 448 F. Supp. 3d 849, 859 (N.D. Ill. 2020).

so users see most relevant data "without actually opening the application up." 880 F.3d at 1363.

In stark contrast to the claims analyzed by the Federal Circuit in these cases, the Asserted Claims here do not provide improvements to the functionality of the computer itself, but instead, merely recite the abstract idea of providing information based on the satisfaction of a condition.

Sanderling's reliance on the *Logical Intelligence* and *Kove IO* district court cases is equally misplaced.  The claims at issue in *Logical Intelligence* recited "a specific manner of limiting information which should be displayed" to improve a user interface display, similar to the patent eligible claims of *Core Wireless*.  2018 WL 1697127 at *8.  Although the court found the claims to be patent eligible because they were directed to a specific improvement to the computer user interface technology like the claims in *Core Wireless*, the court expressly warned that "the reasoning of *Core Wireless* may rest on narrow ground," and "[o]ther Federal Circuit cases confirm that not every purported technological improvement is patent eligible." *Id*.  Moreover, the Asserted Claims do not recite the display of any of the transmitted information.  And, finally, in *Kove IO*, this District found that claims "directed toward a distributed storage system in which location information can be stored in multiple servers to reduce the processing time" by utilizing "a hash function" to permit "a location server without a particular data file's location information to determine which location server  would  have  that  information" to be patent eligible because they "focus on the specific asserted improvement in computer capabilities."  48 F.Supp.3d at *858-859.  In other words, those claims focused on a specific improvement to the data storage itself, and not an abstract idea of providing information based on satisfying a condition like the claims here.

As the cases cited by Sanderling make clear, there is a bright line between patent eligible claims that are directed to improvements to computers themselves (e.g., user interface and data storage performance) as opposed to non-eligible claims that are directed to an abstract idea that is

merely performed on generic computer components.  The claims here fall into the latter category.

### 4.  Sanderling's critiques of Snap's Step One analysis lack merit.

Sanderling makes only two conclusory critiques of Snap's analysis under Step 1 of *Alice*.  First, Sanderling argues that Snap's Motion "asks the Court to oversimplify the claims."  (Opposition at 11.)  Snap does no such thing.  Instead, Snap's Motion provides a detailed limitation-by-limitation comparison to claims discussed in multiple Federal Circuit cases.  For example, Snap's Motion compares each independent claim limitation from the Asserted Claims to the claims that were deemed to be unpatentable by the Federal Circuit in the *In re Rosenberg* case, (as well as other precedential and persuasive cases).  (Motion at 10-13.)  Ironically, Snap's description of the Asserted Claims closely tracks Sanderling's own description from its Opposition.  Specifically, Sanderling characterizes the Asserted Claims as a "computerized method and system of distributing, in a targeted manner, relevant digital image processing functions to mobile devices based on their GPS locations (or other conditions)."  (Opposition at 2.)  Indeed, the Court could just as easily rely on this characterization of the Asserted Claims provided by Sanderling to track the same patentability analysis discussed in Snap's Motion, and the Court would arrive at the same conclusion that the claims merely recite an abstract idea.

Second, Sanderling takes issue with Snap's contention that the Asserted Claims "can easily be performed by a human."  (Opposition at 12.)  But, Sanderling merely provides a conclusory response that "[t]here is no way a human can perform the high-end computation required" by the Asserted Claims.  (*Id*.)  Sanderling makes no attempt to explain why this is the case, or what "high-end computation" is required by the claim.  Indeed, the claims recite no such computational improvement, nor would such an improvement render the claims patent eligible.  *See iSentium, LLC v. Bloomberg Fin. L.P.*, 343 F. Supp. 3d 379, 389 (S.D.N.Y. 2018) ("[D]ata analysis is an abstract idea excluded by section 101, even if done with an efficiency and scale not achievable by

individuals.") (citing *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163-65 (Fed. Cir. 2018)).

      In sum, the Asserted Claims fail to satisfy the first step of *Alice* and should be found invalid.

### C.    *Alice* Step Two: The Asserted Claims Do Not Recite an Inventive Concept.

      Sanderling's argues that "[t]he Asserted Claims survive at Step Two as well because they recite an ordered combination of steps that, taken together, amounts to significantly more than routine and conventional use of computers." (Opposition at 12.)  However, Sanderling grossly mischaracterizes the claims, which ***do not recite an ordered*** combination of steps.  That is, the claims do not recite any limitation requiring the claim elements to be performed ***in any specific order***.  At best, Sanderling infers a logical order to the "forwarding" or "distributing" limitations because those steps are performed based on the received location or sensor data.  Of course, such an order is engrained in the abstract idea itself of providing information based on the satisfaction of a condition.  Using the postal carrier example, the mail cannot be delivered to an intended address before the address is written on the envelope.  Such an inherent ordering does not salvage an otherwise unpatentable claim from invalidity.  *See, e.g., Customedia*, 951 F.3d at 1364-65.

      In its argument to the contrary, Sanderling primarily relies on *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014) and *Allconnect, Inc. v. Consumer Brands, LLC*, 2018 WL 7377934, at *6-7 (C.D. Cal. Dec. 14, 2018).[4]  Both cases are easily distinguished from the present case.  First, the claims discussed in *DDR Holdings* recited a complex, multi-step ordered interaction between, e.g., "a computer store" containing a "plurality of first web pages" with "active link[s] associated with [] commerce object[s]," a "computer server at [an] outsource provider," and "a web browser" that displays a "second web page" containing a specific set

---

[4] Sanderling also provides a string cite to a handful of additional cases for the proposition that "combinations and arrangements" can be found transformative, but fails to explain how any of those cases compares to the Asserted Claims here.  (Opposition at 14-15.)  Unlike the Asserted Claims here, the claims in those cases recite improvements to specialized components.

elements.  *Id*. at 1249-50. The Federal Circuit found these claims satisfied Step Two of *Alice* because they were "necessarily rooted in computer technology," "overcome a problem specifically arising in the realm of computer networks," and were specific enough to not "preempt every application of the ideas of increasing sales by making two web pages look the same." *Id*. at 1257, 1259.  In contrast, the present claims are not rooted in computer technology, but instead, merely recite performing an abstract idea on generic computer components.  Sanderling conspicuously does not make any argument that the claims are sufficiently specific to avoid preemption.  That is likely because the claims provide no specific boundaries to the implementation of the abstract idea as did the claims in *DDR Holdings*.  Furthermore, in *Allconnect*, although the district court recognized that the claims were directed at the abstract idea of "ranking and recommending products and services based in part on geography—for which a computer is used in its ordinary capacity," the court declined to find the claims ineligible in Step Two of *Alice* because the claims potentially required "a specialized database" that includes "pointers that cross-reference data from one table to another . . . ." 2018 WL 7377934, at *6-7.  In contrast, the claims here do not recite any specialized computer components to implement the abstract method.

Remarkably, Sanderling provides no substantive response to the substantial authority Snap cites and discusses in detail in its Motion in support of its Step Two analysis.  Instead, Sanderling contends in a footnote that "[t]he cases cited by Snap for Step Two are all distinguishable because they involved automating abstract or conventional processes without incorporating an inventive step."  (Opposition at FN8.)  Of course, that is precisely the point—as explained in Snap's Motion, the claims discussed in each of those cases analogously recited the implementation of an abstract idea using the same generic computer components that are recited by the Asserted Claims here.

## III.    CONCLUSION

For the foregoing reasons, the Asserted Claims are invalid pursuant to 35 U.S.C. § 101.

Date: December 21, 2020

SNAP INC.

*/s/ Bradley C. Graveline*
Bradley C. Graveline (6203817)
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
70 West Madison Street, 48th floor
Chicago, Illinois 60602
Office: (312) 499-6316
Cell: (312) 339-4804
Fax: (312) 499-6301
bgraveline@sheppardmullin.com

Steven G. Schortgen *(Pro Hac Vice Pending)*
Jennifer Klein Ayers *(Pro Hac Vice Pending)*
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
2200 Ross Ave, 24th Floor
Dallas, Texas 75201
Office: (469) 391-7400
Fax: (469) 391-7401
sschortgen@sheppardmullin.com
jayers@sheppardmullin.com

Jesse Salen *(Pro Hac Vice Pending)*
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
12275 El Camino Real, Ste. 200
San Diego, CA 92130-4092
Office: (858) 720-8964
Fax: (858) 523-6722
jsalen@sheppardmullin.com

Counsel for SNAP INC.

## <u>CERTIFICATE OF SERVICE</u>

I, Bradley C. Graveline, an attorney, hereby certify that on December 21, 2020, I

caused the foregoing MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) to be

electronically filed with the Court in accordance with the Court's electronic filing system.

Notice of this filing will be sent to all counsel of record by operation of the Court's electronic

filing system.

By: <u>/s/ Bradley C. Graveline</u>
Bradley C. Graveline (6203817)
SHEPPARD, MULLIN, RICHTER &HAMPTON,
LLP
70 West Madison Street, 48th floor
Chicago, Illinois 60602
Office: (312) 499-6316
Cell: (312) 339-4804
Fax: (312) 499-6301
bgraveline@sheppardmullin.com
*Counsel for SNAP INC.*