JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 21-2324-GW-JCx | Date | May 18, 2021 |
| Title | *Sanderling Management Ltd. v. Snap Inc.* | Page | 1 of 1 |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | | None Present |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s) | | Attorneys Present for Defendant(s) |
| None Present | | None Present |

**Proceedings:** IN CHAMBERS – FINAL RULING ON DEFENDANT'S MOTION TO DISMISS [17]

Attached hereto is the Court's Final Ruling. The Court **GRANTS** Defendant's Motion to Dismiss as to the '412 Patent, the '866 Patent, and the '986 Patent. The Court also denies Plaintiff's request to amend the Complaint first raised at the hearing as Plaintiff could not articulate how any amendment would change the Court's analysis. The dismissal is with prejudice.

***Sanderling Management Ltd. v. Snap Inc.***, Case No. 2:21-cv-02324 GW-(JCx)
Final Ruling on Motion to Dismiss

## I. Background

Plaintiff Sanderling Management Ltd. ("Sanderling" or "Plaintiff") brought this action against Snap Inc. ("Snap" or "Defendant"), alleging infringement of U.S. Patent Nos. 9,355,412 ("the '412 Patent"), 9,639,866 ("the '866 Patent"), and 10,108,986 ("the '986 Patent") (collectively, "the Asserted Patents"). Complaint, Docket No. 1. Defendant moves to dismiss Plaintiff's Complaint. Motion, Docket No. 18. Plaintiff filed an Opposition. Opp'n, Docket No. 34. Defendant filed a Reply. Reply, Docket No. 43.

For the reasons stated herein, the Court **GRANTS** Defendant's Motion.

## II. Legal Standard

### A. Motion to Dismiss (Rule 12(b)(6))

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.").

In deciding a Rule 12(b)(6) motion, a court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact therein as true, and draw all reasonable inferences from well-pleaded factual allegations in plaintiff's favor. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). A court is not required to accept as true legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where a plaintiff facing a Rule 12(b)(6) motion has pleaded "factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged," the motion should be denied. *Id.*; *Sylvia Landfield Trust v. City of Los Angeles*, 729 F.3d 1189, 1191 (9th Cir. 2013). But if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged − but it has not show[n] . . . the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (citations omitted).

If a court dismisses certain claims, "[l]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)).

**Patent Eligibility Under 35 U.S.C. § 101**

An invention or a discovery is patentable if it is a "new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. "In choosing such expansive terms . . . Congress plainly contemplated that the patent laws would be given wide scope." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980). Still, the Supreme Court has identified exceptions to this wide scope to distinguish patents that claim the building blocks of human ingenuity, which are ineligible for patent protection, from those that "integrate the building blocks into something more." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014) (*quoting Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 89 (2012)) (internal quotations omitted). These exceptions to patent protection are "laws of nature, natural phenomena, and abstract ideas." *Diamond v. Diehr*, 450 U.S. 175, 185 (1981). While the boundaries of the judicial exceptions remain subject to further development, the Supreme Court has clearly delineated the policy underlying those exceptions: avoiding patents that "too broadly preempt the use of a natural law [or abstract idea]." *Mayo*, 566 U.S. at 73. Thus, patent law should "not inhibit further discovery by improperly tying up the future use of laws of nature [or abstract ideas]." *Id.* at 1301.

In *Mayo*, the Supreme Court "set forth a framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217. The first step is to ask, "whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* If not, the claims fall within the scope of § 101 and are patent-eligible. If the claims are directed to one of the exceptions, the next step is to search for an "inventive concept" that is "sufficient to ensure that

2

the patent in practice amounts to significantly more than a patent upon the natural law itself." *Mayo*, 566 U.S. at 72-73.  In doing so, a court must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application."  *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 78-79).  If, in considering the claim elements individually and as an ordered combination, they merely recite well-understood, routine, and conventional steps, they will not constitute an inventive concept for patent eligibility purposes.  *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).  "Whether the claim elements or the claimed combination are well-understood, routine, conventional is a question of fact."  *Id.*; *see also Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) ("Like indefiniteness, enablement, or obviousness, whether a claim recites patent eligible subject matter is a question of law which may contain underlying facts.").

### III. Discussion

#### A. Background of the Asserted Patents and the Asserted Claims

The '412 Patent issued on May 31, 2016, the '866 Patent issued on May 2, 2017, and the '986 Patent issued on October 23, 2018.  Docket Nos. 34-2, 34-4, 34-4.  The Asserted Patents share a common specification and a common title, "Dynamic Promotional Layout Management and Distribution Rules."  *See id.; see also* Docket No. 34 at 2.  Plaintiff alleges that Defendant infringes claims 1-12 of the '412 Patent, claims 1-11 of the '866 Patent, and claims 1-34 of the '986 Patent (collectively, "the Asserted Claims").  Docket No. 34 at 2; Docket No. 1 ¶¶ 30-105.  Claim 1 is the only independent claim in both the '412 Patent and the '866 Patent.  *See* Docket No. 34-2; Docket No. 34-3.  The '986 Patent has two independent claims: Claim 1 and Claim 18.  Docket No. 34-3.

> Claim 1 of the '412 Patent recites:
>
> A computerized method of distributing a digital image processing function, said computerized method comprising:
> using at least one server having at least one hardware processor and over a network to access a database storing at least one digital image processing function associated with at least one distribution rule defining a geographic location;
> receiving, over said network, a Global Positioning System (GPS) location indication from each of a plurality of mobile devices, each said location indication is determined according to a GPS module executed by one of said plurality of mobile devices;

3

> matching, using said at least one at least one hardware processor, each said GPS location indication with said geographic location; and
>
> automatically forwarding, over said network and in response to receiving said Global Positioning System (GPS) location indication, said at least one digital image processing function to at least one mobile device of said plurality of mobile devices, said at least one mobile device having a respective said GPS location indication which matches said geographic location;
>
> wherein said at least one image processing function is set to be used by an application executed on said at least one mobile device to process a digital image designated at said at least one mobile device to create an output digital image.

'412 Patent, Claim 1.

> Claim 1 of the '866 Patent recites:
>
> A computerized method of distributing a digital image processing function, said computerized method comprising:
>
> using by at least one server having at least one hardware processor one or more digital image processing functions, each of said digital image processing functions associated with a geographic location;
>
> receiving, over a network, a Global Positioning System (GPS location indication from each of a plurality of mobile devices, each said GPS location indication is determined according to a GPS module executed by one of said plurality of mobile devices; and
>
> automatically forwarding, over said network at least one of said digital image processing functions to at least one of said plurality of mobile devices, based on a match between the geographical location associated with said at least one digital image processing function and the GPS location indication of said at least one mobile device;
>
> wherein said at least one image processing function is set to be used by an application executed on said at least one mobile device to process a digital image designated at said at least one mobile device to create an output digital image.

'866 Patent, Claim 1.

> Claim 1 of the '986 Patent recites:
>
> A computerized method of distributing a digital media content processing function, the computerized method comprising:
>
> accessing at []least one server having at least one hardware processor one or more digital media content processing functions, each of the digital media content processing functions associated with at least one distribution rule defining a sensor data condition;
>
> receiving, over a network, sensor data from each of a plurality of mobile devices, wherein the sensor data is determined according to outputs of at least one sensor of each of the plurality of mobile devices; and
>
> distributing, over the network, at least one of the digital media content processing functions to at least one of the plurality of mobile devices, based on a match

> between the sensor data condition defined by the at least one distribution rule associated with the at least one digital media content processing function and the sensor data of the at least one mobile device;
>
> wherein the at least one digital media content processing function is configured to be used by an application executed on the at least one mobile device to process a digital media content to create an output digital media content.

'986 Patent, Claim 1.

> Claim 18 of the '986 Patent recites:
>
> A system of distributing a digital media content processing function, the system comprising:
>
> at least one server having:
>
> a network interface configured for receiving, over a network, sensor data from each of a plurality of mobile devices, wherein the sensor data is determined according to outputs of at least one sensor of each of the plurality of mobile devices;
>
> a database configured for storing one or more digital media content processing functions, each of the digital media content processing functions associated with at least one distribution rule defining a sensor data condition; and
>
> at least one hardware processor adapted to execute program code for distributing at least one of the digital media content processing functions to at least one of the plurality of mobile devices over the network;
>
> wherein the distributing is performed based on a match between the sensor data condition defined by the at least one distribution rule associated with the at least one digital media content processing function and the sensor data of the at least one mobile device;
>
> wherein the at least one digital media content processing function is configured to be used by an application executed on the at least one mobile device to process a digital media content to create an output digital media content.

'986 Patent, Claim 18.

Defendant limits its motion to dismiss arguments specifically to discussing the Claims 1 of each of the Asserted Patents, contending that Claims 1 of each of the Asserted Patents is representative of all the claims. *See, e.g.,* Docket No. 18 at 2-5. Defendant argues Claim 18 of the '986 Patent, while written as a system claim rather than a method claim, "substantially mirror[s the method claims]." *Id.* at 4. Plaintiff objects to treating any of the claims as representative as premature, stating: "[t]here are likely to be claim construction arguments that impact which claims are representative and which impart further reasons for patentability." Docket 34 at 3, n.1.

The Court agrees with Defendant that, for the purpose of this order, Claim 1 of each Asserted Patent is representative, and rejects Plaintiff's generalized objections to the contrary.

*See, e.g., Berkheimer*, 881 F.3d at 1365 ("Courts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative.").

### B. *Alice* Step One

Defendant argues that the Asserted Claims are abstract under *Alice* because they are directed to "providing information − in this case, a processing function − based on meeting a condition." Docket No. 18 at 9. Defendant argues that the use of location overlays in advertising or families posing behind character cut-outs in a photograph are both analogous to what is claimed in the Asserted Patents. *Id.* Defendant further argues that "[t]he added claim language of 'using' or 'accessing' the processing function with a server, receiving sensor data or a GPS location indication from a mobile device, matching the sensor data or location indication to a condition, and transmitting the processing function to the mobile device do nothing but describe the same age-old idea of providing a processing function based on a condition, *e.g.*, a location where an image was acquired." *Id.* at 9-10. Defendant also argues that: (1) the asserted claims are abstract because they describe "computer-performed mental steps that otherwise would have been performed by a person," *id.* at 10 (*citing In re Rosenberg*, 813 F. App'x 594, 596 (Fed. Cir. 2020)); and (2) "the idea of providing information based on matching a condition has been found to be abstract by both the Patent Trial and Appeal Board (PTAB) and the Federal Circuit." Docket No. 18 at 11. Finally, Defendant argues that "the claims in the Asserted Patents merely recite generic components described only by their functions." *Id.* at 12.

Plaintiff responds that Defendant's Motion is premature at this stage. Docket No. 34 at 5-6. Plaintiff argues that allegations of the Asserted Patents' improvement over the prior art in its Complaint precludes dismissal at this stage. *Id.* (*quoting* Docket No. 1 ¶¶ 12, 23). Plaintiff further argues that certain issues also preclude dismissal such as (1) claim construction of the phrases "distribution rule" and "few seconds or less;" and (2) fact discovery into the state of the art at the time of the invention.

Plaintiff next argues that the Asserted Claims are directed to an improvement of computer capabilities and are patent eligible. *Id.* Plaintiff argues that "focus on a specific improvement: a particular system and method of automatically distributing relevant digital image processing functions to mobile devices based on their GPS locations (or other conditions),

6

resulting in improved and highly scalable promotional content distribution." *Id.* Plaintiff asserts that the "Asserted Claims are also directed to an improved distribution method: a scalable and efficient way for mobile device users to quickly and efficiently share branded images and videos in a targeted manner, which was an improvement over prior distribution methods." *Id.* at 9. According to Plaintiff, the Asserted Claims give specific steps with "specific implementation details." *Id.* at 8-9. Additionally, Plaintiff argues that Defendant "characterize[es] the Asserted Claims at a high level of abstraction and untethered from the language of the claims" and "asks the Court to oversimplify the claims in a manner that the Federal Circuit has consistently rejected." *Id.* at 11 (internal quotations omitted). Plaintiff also asserts that the USPTO accepted its arguments regarding the eligibility of the Asserted Claims during the prosecution of the Asserted Patents. *Id.* at 9-10.[1] Finally, Plaintiff argues that "[t]here is no way a human can perform the high-end computation required here − certainly not for 'a plurality of mobile devices' in a network in a dynamic manner as claimed." *Id.* at 12.

In reply, Defendant argues that Plaintiff fails to identify any material factual dispute and, "even if taken as true, the alleged disputed facts Sanderling identifies are overly generalized and not material to the patentability of the Asserted Claims pursuant to Section 101." Docket No. 43 at 2. As to the claim construction issue, Defendant argues that: (1) Plaintiff's failure to propose a construction demonstrates the insignificance of the terms to the § 101 analysis; and (2) both parties used consistent characterizations of the Asserted Claims. *Id.* at 3-4. Further, Defendant argues that "factual findings about the prior art do not impact a Section 101 analysis and need not be resolved at this time," and Plaintiff failed to "identify with any particularity an actual dispute over the state of the art that would be material to the Court's analysis under Section 101." *Id.* at 4-5.

Defendant also reiterates its position that "the Asserted Claims merely perform abstract mental steps on generic computer components." *Id.* at 8. Defendant argues that "even if taken as true, [Plaintiff's alleged improvements] are not directed to improving the computer itself, and thus, do not turn the otherwise abstract claims into patent-eligible subject matter. *Id.* at 5. Defendant further argues that "just because the distribution rule recited in the Asserted Claims allegedly improves the speed at which digital image processing functions can be distributed to

---

[1] Plaintiff noted that the Court could take judicial notice of the prosecution history of the Asserted Patents. The Court does so to the extent necessary to resolve this motion.

mobile devices based on meeting a condition, [Plaintiff] does not allege, nor do the claims recite, a mechanism for improving the actual performance of the computer components recited in the claims." *Id.* at 6. Defendant asserts that Plaintiff fails to tie the improvements "to the operation of the computer itself." *Id.* at 10. Defendant also argues that Plaintiff reads "limitations into the claims that are not recited (i.e., "dynamic loading")" and "fails to explain how such a filtering rule, which is standard fare in computer technology, actually improves the speed at which the digital image or media content processing functions are distributed." *Id.* Finally, Defendant argues that "there is a bright line between patent eligible claims that are directed to improvements to computers themselves (e.g., user interface and data storage performance) as opposed to non-eligible claims that are directed to an abstract idea that is merely performed on generic computer components." *Id*. at 12-13.

The Court finds that the Asserted Claims are not "directed to an improvement to computer functionality," but rather are "directed to an abstract idea." *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016) (citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016)). A claim is directed to an abstract idea if it "consist[s] only of 'generalized steps to be performed on a computer using conventional computer activity.'" *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1260 (Fed. Cir. 2016) (citing *TLI*, 823 F.3d at 612). Further, "to avoid ineligibility, a claim must 'ha[ve] the specificity required to transform [the] claim from one claiming only a result to one claiming a way of achieving it.'" *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1296 (Fed. Cir. 2020). As evidence from the claim language, the Asserted Claims disclose the abstract idea "of providing information − in this case, a processing function − based on meeting a condition," *e.g*., matching a GPS location indication with a geographic location. Docket No. 18 at 9. Neither the claim language nor the specification explain how the steps are performed beyond reciting the generic computer components necessary to implement the functions. *See, e.g.,* '412 Patent at 3:1-4:58, 8:46-9:29, Figs. 1, 2. In other words, rather than specifying how to achieve the result, the claim language is "result-focused, [and] functional." *See Neapco* Holdings, 967 F.3d at 1296-97 ("the essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101"). Moreover, that the invention claims tailoring content based on commonly used contexts, such as location, further suggests that the claims disclose an abstract idea. *See, e.g.*, *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1369

(Fed. Cir. 2015) ("Providing this minimal tailoring – e.g., providing different newspaper inserts based upon the location of the individual – is an abstract idea.").

The Court also disagrees with Plaintiff's characterization of the Asserted Claims as setting "forth specific steps, providing implementation details utilizing specific hardware and software components, to automatically, and in a highly-scalable manner, forward relevant digital image- or video-processing functions to users' phones based on a condition such as GPS location." Docket No. 34 at 3. The Asserted Claims recite components such as "server," "network," "hardware processor," "database," "mobile device," and "GPS module," which are nothing more than black-box, generic computer components, *i.e.* "conventional or generic technology in a nascent but well-known environment." *TLI*, 823 F.3d at 611-12 (finding claims impermissibly abstract where they did not disclose a specific improvement to computer functionality, but instead recited use of conventional or generic technology in a nascent but well-known environment); *see also* '412 Patent at 8:54-62 ("aspects of the present invention may take the form of an entirely hardware embodiment, an entirely software embodiment (including firmware, resident software, micro code, etc.) or an embodiment combining software and hardware aspects that may all generally be referred to herein as a 'circuit,' 'module' or 'system.'"); 9:40-44 ("The program code may execute entirely on the user's computer, partly on the user's computer, as a stand alone software package, partly on the user's computer and partly on a remote computer or entirely on the remote computer or server."); 10:63-11:2 (describing different networks generally).

Nor does the intrinsic evidence suggest that the claimed technique improves the functionality of these components. Plaintiff's emphasis on the "automatically forward" limitation of the Asserted Claims is misplaced, as the "mere automation of the exchange and storage of information does not render the claims any less abstract." *Mortg. Application Techs., LLC v. MeridianLink, Inc.*, 839 F. App'x 520, 526 (Fed. Cir. 2021) (citing *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1013 (Fed. Cir. 2018)). Nothing in the claim language explains how to perform the claimed functions beyond the basic instruction of "do it on a computer." *See Secured Mail Solutions LLC v. Univ. Wilde, Inc.*, 873 F.3d 905, 910 (Fed. Cir. 2017) (limitation directed to abstract idea where it failed to provide "description of how the [claimed] unique identifier is generated"); *see also, e.g.*, '412 Patent at 9:50-65 (stating, "Aspects of the present invention are described below with reference to flowchart illustrations and/or

9

block diagrams," where each block "can be implemented by computer program instructions," which "may be provided to a processor of a general purpose computer…").

Plaintiff also has not raised any factual issues related to claim construction disputes or the state of the prior art that would preclude the Court from granting the motion at this stage. Although Plaintiff argues that the Court needs to construe two terms before it can resolve Defendant's Motion, it neither proposed any construction nor explained how any proposed construction would change the § 101 analysis. *See Meridianlink*, 839 F. App'x at 525 (no error where district court declined to engage in claim construction before conducting § 101 analysis where the plaintiff did not propose construction or explain how any proposed construction would change the analysis); *see also Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (affirming district court's § 101 determination on a motion to dismiss because plaintiff proposed no claim construction that would have changed the analysis). Similarly, although Plaintiff argues that the Court needs to consider the state of the prior art, Plaintiff does not explain how the state of the art would meaningfully change the § 101 analysis other than conclusory assertions about the ordered combination of claimed elements. *See Intell. Ventures I*, 838 F.3d at 1315 ("The 'novelty' of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter"). The only difference between the claimed invention and the prior art Plaintiff identifies is the automatic forwarding, which does not render the claims any less abstract, as stated above. *See* Docket No. 34 at 9-10. When taken as a whole, the Asserted Claims are directed to the abstract idea "of providing information − in this case, a processing function − based on meeting a condition."

Thus, the Court finds that the Asserted Claims are directed to an abstract idea under *Alice* Step One and turns to Step Two to analyze whether the Asserted Claims disclose an inventive concept.

### C. *Alice* Step Two

Defendant argues that the "Asserted Claims in this case invoke computer components such as server, processor, network, mobile device, and sensor, in a generic, functional way, such that 'the focus of the claims is not on such an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools.'" Docket No. 18 at 14 (*quoting Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016)). Defendant argues that

the Asserted Claims recitation of: (1) a "server" and "processor" are "nothing more than routine and conventional computer components and, thus, fail to provide a transformative concept"; (2) receipt of a "location indication" from a "GPS module" on a "mobile device" was "known for decades"; (3) "distributing" or "forwarding" "the processing function to the mobile device based on the sensor data generic matching a condition" was enabled by existing technology and is "not enough to save a claim from ineligibility"; and (4) "the processing function is set or configured for use by a mobile device application to create an output image" was already "widely used" and was "readily available." Docket No. 18 at 14-15.

Plaintiff argues that the "Asserted Claims survive at Step Two as well because they recite an ordered combination of steps that, taken together, amounts to significantly more than routine and conventional use of computers." Docket No. 34 at 12. Plaintiff argues that the improvement to the distribution of promotional materials based on location (or another condition) provides the inventive concept. *Id.* at 12-13. Plaintiff also argues that the inventive step is that the improvement "over prior art methods of fixed photo editing functions to be applied by a user on an electronic device by claiming the distribution of new, relevant image processing functions automatically and dynamically over a network − which, in turn, allows for increased scale of content distribution, together with a highly intuitive and smooth user experience, that could not be accomplished in prior systems." *Id.* at 13. Plaintiff argues that "[i]mplementation of the claimed 'distribution rule' to target certain individuals with specific image processing functions in a dynamic fashion fundamentally alters the original information (i.e., GPS location or other condition), and that is sufficiently transformative under Step Two." *Id.* at 14. Plaintiff thus argues that at least the distribution rule "in combination with the other components" "provides the requisite inventive concept." *Id.* Finally, Plaintiff argues that whether the claimed improvements and limitations were "conventional, routine, or well-understood" or if they were "a significant improvement or transformative" requires fact or expert discovery. *Id.* at 8.

In reply, Defendant argues that courts "routinely resolve these fundamental questions [such as if a patented technology is an improvement] under the *Alice* test as a matter of law at the Rule 12 motion stage." Docket 43 at 5. Defendant argues that the Asserted Claims do not recite an ordered combination of steps but merely recites steps that could be performed in any order. *Id.* at 14. Instead, Defendant argues, that the order is inherent based on the abstract idea of

"providing information based on the satisfaction of a condition" and that such inherent order cannot provide the inventive concept. *Id.*

The second step of the *Alice* inquiry asks, "whether the claims do significantly more than simply describe [the] abstract method and thus transform the abstract idea into patentable subject matter." *Affinity Labs*, 838 F.3d at 1262 (*citing Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (internal quotation marks omitted)). The inventive concept "may arise in one or more of the individual claim limitations or in the ordered combination of the limitations." *Bascom*, 827 F.3d at 1349. But "[i]t is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea." *TLI*, 823 F.3d at 613. "Rather, the components must involve more than performance of well-understood, routine, conventional activities previously known to the industry." *Id.* Moreover, "[i]t has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." *BSG Tech, LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018). Further, the Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016).

The Court agrees with Defendant that the Asserted Claims fail *Alice* Step Two as the inventive concept Plaintiff identifies is the abstract idea itself. Specifically, Plaintiff argues that the inventive concept is found in the use of location (or another condition) to distribute photo editing functions on a large scale, but the use of location to tailor and distribute materials is an abstract idea, *see Intell. Ventures I*, 838 F.3d at 1369, and the abstract idea cannot supply the inventive concept. *See BSG*, 899 F.3d at 1290. Additionally, Plaintiff's "distribution rule," is part of the abstract idea of providing something based on meeting a condition and it is therefore ineligible to be the inventive concept that provides significantly more than the ineligible concept. *Id.* [2]

Plaintiff further asserts that the inventive concept is found in the scalability of the distribution as an improvement over the prior art, but the Court again disagrees. Plaintiff asserts

---

[2] Plaintiff cites "dynamic loading" in its brief and the Complaint as an alleged improvement over the prior art, but Plaintiff does not explain what "dynamic loading" is and the '412 Patent provides no explicit description. *See* Docket No. 1 ¶ 23; Docket No. 34 at 6. To the extent Plaintiff argues this is part of the "distribution rule," this too would be part of the abstract idea and cannot qualify as the inventive concept.

that the automation of the forwarding process makes the scale of the distribution possible. But merely automating a function using generic computer components is not sufficiently inventive. *See, e.g.*, *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1056 (Fed. Cir. 2017) ("configuring generic computers in order to 'supplant and enhance' an otherwise abstract manual process is precisely the sort of invention that the *Alice* Court deemed ineligible for patenting") (internal brackets omitted); *see also Alice*, 573 U.S. at 225 ("[T]he relevant question is whether the claims here do more than simply instruct the practitioner to implement the abstract idea . . . on a generic computer."). Indeed, "relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible." *OIP Techs., Inc. v. Amazon, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015).

Although the Asserted Claims recite using computer processors and networks to make the scale of distribution possible, Plaintiff does not and cannot assert that these already-available computer components were an advance on the previous technology. There is no dispute that certain features like GPS technology, mobile camera technology, and the ability to transfer images over a network were well-known components as of the effective filing date of the Asserted Patents. *See, e.g.,* '412 Patent at 15:35-38 (GPS technology known in the art); 1:34-44 (inexpensive image sensors and image processing software were readily available to mobile device manufacturers); 1:45-49 (images can be stored locally or transmitted over a network for remote storage or further processing). The remaining computer components recited in the specification and Asserted Claims are also generic, already-available computer components. *See* Docket No. 18 at 5-7.

Further, the Asserted Patents indicate that the ordered combination of the components was not critical to the inventive concept of the Asserted Claims either. *See, e.g.*, '412 Patent at 8:46-62 (stating that "the invention is not necessarily limited in its application to the details of construction and the arrangement of the components and/or methods set forth in the" specification and may be implemented as hardware, software, or both). Thus, the Asserted Claims' recitation of these already-available technologies cannot plausibly be asserted as an advance for use in carrying out the distribution rule as they are well-understood, routine, and conventional. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1170 (Fed. Cir. 2018) ("an invocation of already-available computers that are not themselves plausibly asserted to be an advance, for use in carrying out improved mathematical calculations, amounts to a recitation of

what is well-understood, routine, [and] conventional."); *see also buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network − with no further specification − is not even arguably inventive."). Here, the claims involve using computer components to receive and send information to a user based on the satisfaction of a condition, and using a computer to automate the process is not an inventive concept.

Because the Asserted Patents are direct to an abstract idea and do not disclose an inventive concept, for the reasons stated above, the Court **GRANTS** Defendant's motion to dismiss as to these patents.

**IV.    Conclusion**

For the reasons stated herein, the Court **GRANTS** Defendant's Motion to Dismiss as to the '412 Patent, the '866 Patent, and the '986 Patent. The Court also denies Plaintiff's request to amend the Complaint first raised at the hearing as Plaintiff could not articulate how any amendment would change the Court's analysis.